**MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, a corporation, Plaintiff,**

v.

**Alice REICHENTHAL, Defendant.**

**Civ. A. No. P–1395.**

United States District Court
S. D. Illinois, N. D.
Jan. 4, 1956.

Rowland H. Long, General Counsel, Ernest W. Furnans, Jr., Asst. Counsel, Springfield, Mass., Miller, Westervelt, Johnson & Thomason, Donald G. Beste and Eugene R. Johnson, Peoria, Ill., for plaintiff.

Raymond K. Fried, Chicago, Ill., Willard B. Gaskins, Peoria, Ill., for defendant.

ADAIR, District Judge.

Massachusetts Mutual Life Insurance Company, a corporation, brought this action to rescind two policies of life insurance issued by it on the life of David Reichenthal, late of Rock Island, Illinois. The insured died within the two year contestable period, and the suit was filed within that period. Prior to instituting the action plaintiff delivered to defendant, Alice Reichenthal, widow of decedent and sole beneficiary under the policies, a letter of rescission as to each policy and tendered to her a return of all premiums paid, with interest at 6% from the respective dates of payment. This tender, in the amount of $2,165.76, was declined, and the amount thereof was later paid by plaintiff to the Clerk under Fed.Rules Civ.Proc. rule 67, 28 U.S.C.A. to abide the further order of the Court. Alice Reichenthal, with her Answer to the Amended Complaint, filed a Counterclaim for $30,000, the face amount of the policies, and demanded trial by jury. To avoid confusion, we shall continue to refer to Massachusetts Mutual Life Insurance Company as "plaintiff", and Alice Reichenthal as "defendant", although their positions are reversed as to the Counterclaim.

Under the direction of the Court the actions were tried simultaneously, the rescission suit being heard by the Court and the Counterclaim by a jury, with the plaintiff taking the burden of going forward with the evidence. The jury trial resulted in a verdict for defendant for $30,000, and judgment was entered in that amount.

At the close of all the evidence the plaintiff filed a motion for judgment in the rescission suit and a motion for a directed verdict in the jury action on the Counterclaim. The defendant filed a motion for a directed verdict in both cases. Since the rescission suit was tried by the court without a jury, defendant's motion for a directed verdict in that suit is misentitled and will be considered as a motion to dismiss and for judgment in accordance with the prayer of the motion. Ruling on all these motions was taken under advisement until after the verdict of the jury.

Following the verdict of the jury and within the time allowed by Rule 50(b), the plaintiff filed a motion to have the verdict and the judgment entered thereon set aside and to have judgment entered in accordance with its motion for a directed verdict, and, in the alternative, for a new trial. Decision on this motion was taken under advisement.

In the suit for rescission the Court is of the opinion that plaintiff's motion for judgment should be granted, and it follows that plaintiff's motion in the action on the Counterclaim must also be granted.

In the action for rescission the Court finds the following facts specially and states separately its conclusions of law thereon.

### Findings of Fact

The Court finds that:

1. The plaintiff is a citizen of the State of Massachusetts; and the defendant is a citizen of the State of Illinois, residing in Rock Island, Illinois.

2. This case involves two policies of life insurance written by the plaintiff on the life of David Reichenthal, viz.: A

policy for $20,000 dated October 2, 1950, written on the ten-year term plan, and a policy for $10,000 dated October 11, 1951, written on the ordinary life plan. This second policy was issued in exchange for a term policy in the same amount dated October 11, 1950, under a provision of the earlier policy which permitted it to be exchanged prior to the end of the seventh policy year without medical examination.

3. In the case of each policy the first premium required by the terms thereof was paid in the State of Illinois, and each of said policies was delivered in Illinois.

4. The insured died August 7, 1952, and the cause of his death was coronary thrombosis.

5. The insured's original application for insurance, dated September 8, 1950, was in two parts. Part 2, the medical portion of the application, contained certain questions which were propounded to the applicant by plaintiff's medical examiner and insured's answers thereto correctly recorded.

Among these questions and answers are the following:

Q. "4. During the past ten years have you had
"A. Advice, attendence, or treatment by physicians, practitioners, or any other persons? Ans. Yes.

"B. Treatment or observation in a clinic, health resort, hospital or sanatorium? Ans. No.

"C. Periodic health examinations? Ans. Yes.

"D. X-ray, electrocardiographic, blood or basal metabolism examinations? Ans. Yes."

And, in explanation of the foregoing answers, the applicant stated:

"Cecil Zuckerman, M.D.—Davenport, Iowa. General exam 1949—and for desire to lose weight. Says exam was normal. Had E.K.G. and chest x-ray at that time."

2. "5. Have you at any time ever had
"A. Pain, pressure, or discomfort in the chest, shortness of breath, palpitation, or any disease of the heart? Ans. No.

*    *    *    *    *

"E. Bright's disease, kidney stones, colic or gravel, or any disorder or disease of the bladder, kidney or prostate gland? Ans. No.

"F. *  *  * gout *  *  *? Ans. No.

"G. Any serious illness, disease, or injury or ever undergone any surgical operation other than those mentioned? Ans. No."

6. On said Part 2 of his application for insurance David Reichenthal also stated at the bottom thereof over his signature:

"I understand and agree that:

"1. This application consisting of Parts 1 and 2 taken together shall form the basis of the contract applied for and shall become a part of said contract when issued.

*    *    *    *    *

"I hereby declare that all answers and statements in Parts 1 and 2 of

this application are full, complete and true, and that there are no exceptions to any of such answers other than stated above."

7. The foregoing questions, answers, and statements of the insured were material, both to the acceptance of the risk and the hazard assumed by the plaintiff insurance company. They were accepted by said insurance company as true and relied upon by it as a material inducement to the issuance of the policies in suit, and at the time said policies were issued plaintiff had no information to the contrary.

8. The insured's application for insurance, including Part 2 thereof, forms the basis of and is a part of each of the policies in suit.

9. That the insured's answers, representations, and statements in Part 2 of his application for insurance were, in fact, false, misleading, and incomplete in the light of the following facts established by the evidence:

(A) Insured was a patient at the Moline Public Hospital, Moline, Illinois, May 13–15, 1943, under the care of Dr. Leo Gamburg of Moline, Illinois. On this occasion he gave a history of severe pain in the right groin radiating from the kidney region down into the testicle. Dr. Gamburg's diagnosis was renal calculus of the right side. Treatment included a complete blood count and the administration of morphine. Plaintiff's medical expert testified that renal calculus, or kidney stones, is a serious disease and that the pain associated therewith is one of the most anguishing experiences a human being can have.

(B) Insured was a patient at the Moline Public Hospital for a second time, April 22–23, 1947, again under the care of Dr. Gamburg. On this occasion the insured had a severe pain in his left big toe. He also told Dr. Gamburg that he had substernal pain on exertion radiating down both arms. Dr. Gamburg testified on cross examination that this latter pain was suggestive of angina pectoris. The doctor's diagnosis at the time was an acute attack of gout, which is a constitutional disease. Treatment included a complete blood count, an electrocardiogram, an x-ray of the chest and of the left toe.

(C) Again, for a third time, June 1–3, 1948, the insured was a patient in the Moline Public Hospital under the care of Dr. Gamburg. The immediate occasion for this hospitalization was a pain in his left knee caused by a fall; but upon admission he gave a history of pain under the sternum brought on by walking even small distances for the previous year or two, the pain radiating down both arms and recently becoming more pronounced. He also gave a history of dribbling of urine, first noticed about a year previously, frequency and urgency only recently. Dr. Gamburg's working and final diagnosis was a sprain of the left knee, possible angina pectoris, and prostatic enlargement. An x-ray of the insured's knee disclosed no recent injury, but it did disclose calcification of the larger blood vessels. Treatment also included a complete blood count and an electrocardiogram.

10. On July 21, 1951, a little over nine months after the original policies were issued, the insured while on a vacation in Toledo, Ohio, suffered a coronary heart attack and was hospitalized in the Riverside Hospital of that city until August 15, 1951, under the care of Dr. Benjamin Schulak of Toledo. Upon admission, his chief complaint was a pain in the chest, and he told the admitting intern that he had had transient periods of substernal pain, best described as a feeling of pressure, for the previous five or six years, brought on by smoking or walking too fast. Dr. Schulak's diagnosis was coronary thrombosis following a long history of angina pectoris.

11. While both the policies in suit rest upon insured's original application, the second policy also rests upon an amendment of application which insured executed October 6, 1950, to increase the total amount of insurance applied for from $20,000 to $30,000. In this amendment of application, in connection with

which no further medical examination was required under the rules of the Company, the insured stated, over his signature, in part, as follows:

"I hereby declare that since the date of Part 2 of the original application referred to above:

"(a) I have had no illness, injury, impairment of health or symptom thereof; * * *

"EXCEPT Give full details of exceptions                    *None*

"It is understood and agreed that:

* * * * * *

"5. The statements, answers, agreements and declarations contained in Parts 1 and 2 of the original application, except as herein altered or modified shall be held to relate as well to the additional insurance herein applied for and together with this amendment, shall form the basis of the contract for said additional insurance applied for, and shall become a part of said contract when issued.

"It is hereby declared that all the answers and statements in this amendment are full, complete and true, and have been correctly recorded and that there are no exceptions to any of such answers other than as stated above, and that the applicant is in sound physical condition."

Said statements as to insured's physical condition were incomplete, and untrue, in view of the facts set forth in Paragraph 9 and the history stated in Paragraph 10, above, of these Findings.

12. In the absence of any evidence to the contrary I find that at the time he made application for insurance in the plaintiff Company on September 8, 1950, the insured was aware that he had been a patient in the Moline Public Hospital in 1943, 1947, and 1948, under the care of Dr. Leo Gamburg of Moline, Illinois, and was aware that from 1945 or 1946 on he had suffered from pain in the chest, sometimes radiating down both arms, brought on by smoking or exertion. This pain was identified by the medical witnesses as angina pectoris, a symptom of heart disease.

13. Plaintiff, when it issued the policies in suit, had none of the information described in Paragraph 9, above, of these Findings, although if insured's answers to Part 2 of the application form had been full, complete, and true, as represented, such information would have been disclosed. If plaintiff had had the information set forth in Paragraph 9, or known of the insured's medical history stated in Paragraph 10, above, plaintiff would not have issued the policies in suit.

14. Prior to accepting insured's application plaintiff caused the insured to be examined by one of its medical examiners and even ordered a subsequent cardio-vascular examination because of a slight elevation of the blood pressure. These examinations were objective and disclosed nothing which made the applicant unacceptable for insurance. The same is true of a report which plaintiff received from Dr. Cecil Zuckerman, whose name was mentioned by the insured in his application as having given him an examination in 1949.

15. Plaintiff established that in the diagnosis of heart disease subjective symptoms are more important than objective symptoms and that the chest pain typical of angina pectoris, unless voluntarily disclosed by the patient, may exist and remain undetected by listening to the heart, by blood pressure readings, by an electrocardiogram, or by any other type of objective examination, the examining physician being entirely dependent upon information supplied by the patient unless he happens to observe the patient during an attack. Life expectancy is substantially less among individuals suffering from angina pectoris, which is a symptom of heart disease, than among individuals who are not so afflicted.

16. On the sole issue of the insured's intent plaintiff placed in evidence Part 2 of an application for insurance which David Reichenthal made to the New York Life Insurance Company under date of July 14, 1952. This was after plaintiff's policies were issued. It was also after

insured's hospitalizations at the Moline Public Hospital and his hospitalization at Riverside Hospital, Toledo, Ohio, detailed in Paragraphs 9 and 10, above, of these Findings. It was also after a subsequent hospitalization at St. Luke's Hospital, Davenport, Iowa, August 23—September 4, 1951, where he was attended by Dr. Cecil Zuckerman of Davenport, Iowa. In this application to the New York Life Insurance Company, in response to questions propounded by that Company's medical examiner, the insured stated that he had never been under observation or treatment in any hospital, clinic, asylum or sanitarium; that he had never had and had never consulted a physician or practitioner for any ailment or disease of the heart, blood vessels, kidney or bladder, or for any other ailment or disease not included in previous answers; that he had never had gout; and that he had never consulted or been examined or treated by any physician or practitioner within the previous five years; and at the bottom of this application he declared that he had read each and all of the answers contained thereon; that they were each written as made by him; and that each of them was full, complete, and true; and that the Company, believing them to be true, might rely and act upon them accordingly. This evidence respecting the New York Life application was not controverted by any evidence offered by defendant.

## Conclusions of Law

1. That the Court has jurisdiction of the parties and the subject matter.

2. Under the evidence there is no controverted question of fact in this case upon which reasonable men could differ that misrepresentations were made in the Insured's application and amended application for insurance; that they were relied on by the Insurance Company; and that they were material to the acceptance of the risk and the hazard assumed by the Insurance Company.

3. The false answers and misrepresentations of the Insured in his application and amended application for insurance, as a matter of law, materially affected the acceptance of the risk and the hazard assumed by the plaintiff insurance Company.

4. Under Illinois law proof that a representation in an insurance application, which is believed and relied on by the company, is false and material either to the acceptance of the risk or to the hazard assumed by the insurance company constitutes a sufficient cause for rescission of the policy issued thereon and a complete defense to an action on such policy without proof of actual intent to deceive.

5. That the insured made false statements in his application and amended application, statements material both to the acceptance of the risk and to the hazard assumed by the insurance company and that they were relied on by the Company has been so conclusively proved in this case that actual intent to deceive, if a showing thereof were required, would be presumed as a matter of law.

6. The evidence which entitles plaintiff to rescind the insurance policies in suit constitutes a complete defense to defendant's Counterclaim on the policies.

7. In the suit on the Counterclaim the verdict of the jury is contrary to the law, the evidence, and the weight of the evidence.

## Judgment

In accordance with the foregoing Findings of Fact and Conclusions of Law, it is ordered, adjudged, and decreed as follows:

Plaintiff's motion for judgment in the rescission suit is granted, and each of the policies in suit is ordered rescinded, and plaintiff is discharged of and from any and all further liability with regard to each of said policies except as hereinafter provided with respect to the return of premiums. The policies in suit, if in the possession of the defendant or the Clerk, are ordered delivered up to the plaintiff for cancellation.

The judgment entered June 9, 1955, on the verdict of the jury is vacated, and the Clerk is directed to re-tax the costs

against the defendant and to enter judgment for plaintiff for its costs. The Clerk is directed to continue holding the sum of $2,165.76, representing premiums paid on the policies in suit with interest thereon until disposition of the appeal in this case, if any be taken. If no appeal is taken within the time permitted by law, then the Clerk is ordered to pay said sum to defendant after costs are paid in full or defendant has authorized their deduction from the aforesaid sum.

In view of the foregoing rulings, the verdict of the jury is set aside. Plaintiff's motion for judgment notwithstanding the verdict and for judgment in accordance with its previous motion for a directed verdict in the suit on the Counterclaim is granted. Plaintiff's motion in the alternative for a new trial is denied.

Defendant's motions are, and each of them is, denied.