JAMES DEBOLT, Plaintiff-Appellant, *v.* MUTUAL OF OMAHA, Defendant-Appellee.

Third District    No. 77-312

Opinion filed January 6, 1978.

John A. Slevin and Gregg N. Grimsley, both of Vonachen, Cation, Lawless, Trager & Slevin, of Peoria, for appellant.

Duncan B. Cooper, William J. Becker, and Gary D. Nelson, all of Heyl, Royster, Voelker & Allen, of Peoria, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from an order of the circuit court of Peoria County which dismissed certain counts of the plaintiff James Debolt's complaint against the defendant Mutual of Omaha, an insurer, and from which the plaintiff sought punitive damages in the sum of $5,000,000 for breach of a duty of good faith and fair dealing and compensatory damages in the sum of $250,000 for intentional infliction of emotional distress.

The plaintiff Debolt on May 20, 1970, purchased a disability income policy from the defendant insurer, Mutual of Omaha. At the time of this purchase the plaintiff was self-employed, 49 years of age, and it was alleged that he believed himself to be in good health. In December of 1973 he received a severe injury to his back and as defined by his policy of insurance with the defendant became totally disabled. The plaintiff alleged in his complaint that the defendant, even though cognizant of his physical incapacity and financial problems, nevertheless engaged in a course of conduct which should be classified as malevolent or grossly oppressive. Such conduct consisted of the defendant's delayed payments of disability income to the plaintiff and the ultimate cessation of any payments to him which forced him to employ counsel and to file a lawsuit. The plaintiff further alleged that the defendant instituted a policy of shuffling plaintiff's claim file between its Illinois office and its home office in Nebraska which effectively confused and frustrated the plaintiff in his efforts to secure his disability benefits. Further allegations of the plaintiff were to the effect that agents of the defendant instilled in him the thought that his life was in jeopardy and when the disability benefits were substantially in arrears the defendant offered to repurchase the contract of insurance at an unconscionably low figure.

The above allegations were contained in counts II and III of the plaintiff's complaint. It was in count II that punitive damages in the amount of $5,000,000 was sought for a breach of duty of good faith and fair dealing by the defendant to its insured, the plaintiff. Count III sought compensatory damages in the amount of $250,000 for the intentional infliction of emotional distress upon the plaintiff by the defendant. The trial court granted defendant's motion to dismiss counts II and III with prejudice. Count I, which sought contract damages for a breach of the disability insurance contract, was voluntarily dismissed by the plaintiff and this appeal ensued.

We first direct our attention to the issue as to whether the trial court committed error in dismissing count III of the plaintiff's complaint, which

sought damages for the alleged intentional infliction of emotional distress.

■■ The tort of intentional infliction of severe emotional distress was recognized in our State in 1961. (*Knierim v. Izzo* (1961), 22 Ill. 2d 73, 174 N.E.2d 157.) A tort action for intentional infliction of severe emotional distress may be maintained even though unaccompanied by physical injury or the threat of physical injury. *Pierce v. Board of Education* (1976), 44 Ill. App. 3d 324, 358 N.E.2d 67.

The elements of this comparatively new tort have been firmly established. Referring to the Restatement (Second) of Torts §46 (1965), we find the following:

"§46. Outrageous Conduct Causing Severe Emotional Distress.

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

■■ The elements of the tort for the intentional infliction of emotional distress are (1) extreme and outrageous conduct, (2) intent by the defendant to cause, or a reckless disregard of the probability of causing emotional distress, (3) severe or extreme emotional distress suffered by the plaintiff, and (4) an actual and proximate causation of emotional distress by the defendant's outrageous conduct.

All of the above stated elements must be present to support the tort and hence we are confronted with determining if they are present in the instant case. We are well aware of the fundamental rule that a motion to dismiss such as we had in the instant case admits all facts well pleaded together with all reasonable inferences which could be drawn from those facts. (*Pierce v. Board of Education* (1976), 44 Ill. App. 3d 324, 358 N.E.2d 67.) This general rule of law has been tempered, however, in that it is also well established that a motion to dismiss or strike a pleading admits facts well pleaded, but not conclusions of law or conclusions of fact unsupported by allegations of specific facts upon which such conclusions rest. (*Pierce v. Carpentier* (1960), 20 Ill. 2d 526, 169 N.E.2d 747.) In examining the complaint of the plaintiff in the instant case we find that it is fraught with conclusions of fact unsupported by allegations of specific facts, *i.e.*, that defendant instilled in plaintiff a fear for his life and that defendant instituted a policy designed to coerce the plaintiff into surrendering his policy.

The plaintiff has failed to allege specific facts which could be interpreted as outrageous conduct on the part of the defendant or which would substantiate the plaintiff's allegation that he suffered severe or extreme emotional distress.

■■ The specific facts pleaded by the plaintiff are that the defendant ultimately denied liability under the disability policy, that it referred the plaintiff's claim from its Illinois office to its Nebraska office, and that it offered to settle a disputed claim with the plaintiff in return for a surrender of the policy. We do not deem such conduct on the part of the defendant to be so oppressive or outrageous as to support the tort of infliction of severe emotional distress. In the case of *Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 360 N.E.2d 765, the plaintiff alleged with detailed specificity certain acts of the defendant that were far more abusive and intolerable than those alleged in the instant case, yet our supreme court found that they failed to state a cause of action for the tort of intentional infliction of severe emotional distress. We conclude that as to count III the trial court properly granted the defendant's motion to dismiss the same.

We next direct our attention to the issue as to whether the trial court committed error in dismissing count II of the plaintiff's complaint which sought damages in the sum of $5,000,000 for the breach of duty of good faith and fair dealing by the defendant to the plaintiff, its insured.

We are cognizant of the rapid and continuing developments in all jurisdictions which have in the past quarter of a century expanded the field of torts. We will not itemize these many expansions since they are well documented in 20 A.T.L.A. Law Reporter, No. 9 (November 1977). Until recently in our State a breach of a contract did not give rise to an action in which punitive damages were recoverable unless in addition to the breach there was an independent, wilful tort. (*Wallace v. Prudential Insurance Co.* (1973), 12 Ill. App. 3d 623, 299 N.E.2d 344; *Ash v. Barrett* (1971), 1 Ill. App. 3d 414, 274 N.E.2d 149; *Sears v. Weissman* (1972), 6 Ill. App. 3d 827, 286 N.E.2d 777.) An exception to the rule that punitive damages are not recoverable in contract actions is to be found in the case of *Ledingham v. Blue Cross Plan for Hospital Care* (1975), 29 Ill. App. 3d 339, 330 N.E.2d 540. In *Ledingham* the appellate court from the fifth Appellate Court District held that a breach of contract itself may constitute an unusual case where an independent wilful tort will be found and that punitive damages may be recovered.

We have carefully examined the case of *Ledingham* and after such examination do not feel constrained to accept the result reached as being precedental in the instant case.

We reach this conclusion for several reasons. First we note that in *Ledingham* the reviewing court relied on the case of *Nevin v. Pullman Palace Car Co.* (1883), 106 Ill. 222. In *Nevin* the plaintiff, his wife and his niece were refused the use of a berth in a sleeping car without justification. When the plaintiff left the car to get a breath of fresh air, the door was slammed on him, and his baggage and family were then

removed to the coach where they had to spend the night. Plaintiff sued in tort and the railroad argued that the plaintiff was limited in his cause of action to a breach of contract of carriage and recovery of the ticket fare. Our supreme court held that while assumpsit (action on the contract) would certainly lie for the breach of implied duties, it was equally well settled that case (action on the tort) would lie also. We quarrel not with the ruling in the case of *Nevin* but we deem it important to remember that the defendant was a common carrier and should the plaintiff have been restricted to only a contractual recovery, his award would have been the cost of tickets purchased. We do not find it surprising that our supreme court was of the opinion that such a recovery would have been inadequate and hence permitted an action against the common carrier based on tort. While as we have stated we quarrel not with the result reached in *Nevin,* we do not think that the case is authority for the proposition that a cause of action for punitive damages exists against an insurance carrier who refuses to pay policy benefit. In the instant case if the allegations of the plaintiff were sustained by the evidence he would in an action on the contract recover what he was entitled to recover and expected to recover according to the terms of the insurance contract.

■■ In *Ledingham* the reviewing court also relied on law that has been enunciated in the "duty to settle" cases. The duty to settle arises when the insurer is granted by contract the right to complete control over the negotiation and litigation of claims against its insured. (*Cernocky v. Indemnity Insurance Co. of North America* (1966), 69 Ill. App. 2d 196, 216 N.E.2d 198.) Where the insurer ignores the interest of its insured and judgment in excess of policy limits is awarded the insurer will be compelled to pay the excess. We do not deem the "duty to settle" cases pertinent to the instant case since the insurer's discretion and control is not absolute. In the instant case the plaintiff insured could have maintained an action on the contract at any time in order to enforce the same and obtain the benefits it provided. In the "duty to settle" cases the breach of an implied duty of good faith in settlement negotiations results in monetary damages to an insured which are not recoverable in an action on the contract.

In *Ledingham* the reviewing court also relied on a number of California cases as authority for an award of punitive damages for a breach of good faith and fair dealing on the part of an insurer in his relationship with its insured. We will make some observations concerning the California cases as we set forth an additional reason why we do not deem the case of *Ledingham v. Blue Cross Plan for Hospital Care* (1975), 29 Ill. App. 3d 339, 330 N.E.2d 540, as being dispositive of the instant case.

We consider it to be of considerable import in the instant case that our State legislature has provided a remedy to insureds where an insurance

company's refusal to pay or honor its contract is unreasonable and vexatious. Section 155 of the Illinois Insurance Code (Ill. Rev. Stat. 1975, ch. 73, par. 767) permits an insured to recover attorney fees (25% of the amount the plaintiff is entitled to recover or $1,000 or whichever is the less) if it appears to the court that the insurer's refusal to pay is vexatious and without reasonable cause. This statutory provision has been the law in our State since 1967.

We are of the opinion that the legislature has intended to provide a remedy to an insured who encounters unnecessary difficulties with an unreasonable and vexatious insurance company. The insured can maintain an action on the contract for recovery of withheld policy benefits and upon proper finding by the court can be awarded attorney fees in addition to all other costs. Where the legislature has provided a remedy on a subject matter we are not only loath but in addition harbor serious doubts as to the desirability and wisdom of implementing or expanding the legislative remedy by judicial decree. In *Cunningham v. Brown* (1961), 22 Ill. 2d 23, 174 N.E.2d 153, our supreme court determined that the Illinois Dramshop Act enacted by the legislature provided the sole remedy against tavern owners and operators and refused to permit an unrecognized common law theory to complement the Act and provide an additional remedy. The supreme court concluded that it was not its function and that it lacked the power to provide an additional action against tavern owners and operators even if it agreed with the plaintiff's contention that an additional remedy or action was desirable. See also *Hall v. Gillins* (1958), 13 Ill. 2d 26, 147 N.E.2d 352, where our supreme court refused to find the $25,000 limitation on a recovery in a wrongful death action unconstitutional. The court stated:

"In our opinion the constitutional question is not formidable when it is considered in the context of the situation that existed when the statute was originally enacted. At that time no action whatsoever was permitted for a wrongful death. The legislature took away no right when it enacted the statute. It created both the right and the remedy, and we think that its power to limit the maximum recovery in the action that it created can not be questioned. The fact that most States place no limit upon the amount recoverable, or that the legislative limit may seem unduly low when contrasted with recoveries in other actions, does not affect the power of the legislature, or the validity of its action." 13 Ill. 2d 26, 29.

■■ We readily acknowledge that the courts throughout our nation have been busy for several decades making new inroads in the law of tort, however, we do not deem the making of law by judicial decree to be a desirable practice per se but should be limited to instances when

humanitarian needs dictate the necessity of judicial action or when legislative bodies for an unreasonably long time refuse to enact statutory law for the purpose of coping with an enduring and festering problem. In the instant case there is statutory law of long duration which was enacted to assist an insured as against an unreasonable and vexatious insurer.

As we have previously stated, in the case of *Ledingham* the reviewing court in arriving at its decision relied upon a number of California cases. We believe it to be of significance that there is no statutory provision in California such as that in Illinois (Ill. Rev. Stat. 1975, ch. 73, par. 767) which permits an insured to recoup his attorney fee expenses where an insurer's refusal to pay has been vexatious and unreasonable. It could well be argued that the rationale of the California courts is that absent a statutory remedy punitive damages will be allowed to an aggrieved party who has been mistreated by an insurer. In the case of *Ledingham* the reviewing court saw fit to make no reference to the statutory remedy in our State which is available to an aggrieved insured. We believe the remedy provided in section 155 of the Illinois Insurance Code (Ill. Rev. Stat. 1975, ch. 73, par. 767) is highly significant in that it provides a remedy for an insured and thereby attempts to keep him harmless resulting from the misconduct of his insurer. It may well be that the statutory remedy should provide greater relief but we hold that to be a matter for legislative determination.

■■ For the reasoning set forth we do not believe that the instant case should be determined by the decision in *Ledingham v. Blue Cross Plan for Hospital Care* (1975), 29 Ill. App. 3d 339, 330 N.E.2d 540, and we further conclude that the trial court correctly dismissed count II of the plaintiff's complaint.

For the reasons set forth the order of the circuit court of Peoria County dismissing counts II and III of the plaintiff's complaint with prejudice is hereby affirmed.

Affirmed.

STENGEL, P. J., and STOUDER, J., concur.