CATHERINE McCALL, a/k/a Catherine Andries, Plaintiff-Appellant, *v.* HEALTH CARE SERVICE CORPORATION, d/b/a Blue Cross/Blue Shield, Defendant-Appellee.

Fourth District   No. 4—83—0054

Opinion filed August 12, 1983.

Greaves & Lerner, of Champaign, for appellant.

David C. Thies, of Webber & Thies, of Urbana, and Thomas P. Ward and Michael I. Hyman, both of Chicago, for appellee.

PRESIDING JUSTICE WEBBER delivered the opinion of the court:

This appeal presents another in the growing throng of cases litigating disputes between insurers and insureds over sums allegedly due under policies. While such litigation is as old as the insurance industry itself, the present case presents an aspect which so far as we can determine has not heretofore been passed upon by the reviewing courts of this State.

Since this appeal arose from a dismissal of plaintiff's first amended complaint as insufficient in law under section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—615), no evidence has yet been presented and factual matters must be gleaned from the pleadings. Under these circumstances all well-pleaded facts are presumed true.

Plaintiff filed her original complaint in the circuit court of Champaign County and alleged that by reason of her employment she was an insured of the defendant (Blue Cross) under a group policy. She further alleged that on December 5, 1979, she received medical treatment at a Champaign hospital and that the hospital submitted its bill for $119 to the defendant; that thereafter, on December 20, 1979, defendant Blue Cross notified her that the claim was not covered under Emergency Medical Care provisions of the group policy but would notify her as to coverage under other provisions; that thereafter plaintiff communicated several times with defendant and made submissions of her claim.

Further allegations were that on December 29, 1980, the hospital filed suit against the plaintiff for the services received in December 1979 and obtained a judgment; that on January 13, 1981, plaintiff was notified by defendant that the claim had been paid; that on February 13, 1981, plaintiff's wages were garnished on account of the judgment; and that on March 16, 1981, the claim was paid by the defendant.

Plaintiff's original complaint was in four counts, each sounding under section 155 of the Illinois Insurance Code (Ill. Rev. Stat. 1981, ch. 73, par. 767) and sought $5,000 statutory damages for vexatious and unreasonable delay in payment of the claim and $20,000 exemplary damages for wilful, wanton, grossly negligent and bad faith acts

and omissions by the defendant.

Defendant filed a motion to dismiss the original complaint based upon section 3 of the Non-Profit Health Care Service Plan Act (Ill. Rev. Stat. 1981, ch. 32, par. 553) and attached a certified copy of its articles of incorporation to the motion. Examination of the articles establishes that defendant was in fact organized under that act. Section 3 provides that corporations so organized are exempt from the provisions of the Illinois Insurance Code.

The trial court allowed the motion, dismissed the original complaint, and granted leave to plead over.

Plaintiff filed a first amended complaint in two counts. The factual allegations were identical with those in the original complaint as recited above. She abandoned any claim under section 155 of the Code and alleged only a common law tort: that the defendant had a duty to deal with the plaintiff fairly and in good faith and that it breached that duty by (1) failing to pay the claim; (2) failing to notify plaintiff that the claim was covered by the group policy within a reasonable time after December 20, 1979; and (3) failing to provide plaintiff with accurate information regarding the status of the claim for more than 15 months from December 20, 1979, to March 16, 1981. The first amended complaint also alleged in count I that the acts of the defendant were done in bad faith and caused her embarrassment, harassment, mental suffering, and expense in defending herself. She asked $5,000 actual damages and $20,000 exemplary damages.

Count II of the first amended complaint reiterated all of count I down through the allegations of breach of duty; it omitted the allegation of bad faith and substituted an allegation that defendant knew that its delay was causing severe emotional distress, embarrassment, humiliation, harassment and expense to the plaintiff. It then asked $5,000 in actual damages only.

Defendant filed a motion to dismiss the first amended complaint as being substantially insufficient in law, again under section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—615). The trial court took the motion under advisement and ultimately issued a memorandum order allowing the motion and striking the cause. The court also made a finding under Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)) which we regard as surplusage. Plaintiff appeals from the order of dismissal; we reverse and remand.

■ In its memorandum order the trial court concluded that the conduct alleged was not so outrageous nor so severe as to amount to the intentional infliction of emotional distress. We agree with this finding.

However, the court also dismissed on the basis of section 155 of the Illinois Insurance Code (Ill. Rev. Stat. 1981, ch. 73, par. 767), which it theretofore held to be inapplicable to the defendant in dismissing the original complaint. We are unable to account for this seeming reversal of thinking, and the memorandum order offers no explanation.

■ The issue, simply framed, may be stated to be: is a nonprofit health care service corporation, which is exempt from the provisions of the Illinois Insurance Code, liable in a common law tort action for bad faith in dealing with one of its insureds? In our opinion the answer is yes.

A number of prior cases have considered the question of common law tort action in the context of section 155, but all of them concerned stock or mutual companies which were subject to the Code. (*Debolt v. Mutual of Omaha* (1978), 56 Ill. App. 3d 111, 371 N.E.2d 373; *Tobolt v. Allstate Insurance Co.* (1979), 75 Ill. App. 3d 57, 393 N.E.2d 1171; *Hoffman v. Allstate Insurance Co.* (1980), 85 Ill. App. 3d 631, 407 N.E.2d 156.) They are therefore not direct precedent in dealing with the issue presented here where the question is not the existence of a common law tort action in the face of section 155, but the existence of a common law tort action when the insurer is exempt from section 155.

All three of the foregoing cases discussed *Ledingham v. Blue Cross Plan* (1975), 29 Ill. App. 3d 339, 330 N.E.2d 540, which case represents the genesis in this State of the nation of the common law tort of bad faith dealing on the part of an insurer. *Debolt* and *Tobolt* were critical of *Ledingham* for not considering section 155. *Hoffman*, in a more lenient fashion, held that section 155 did not on its face preempt the common law tort. *Lynch v. Mid-America Fire & Marine Insurance Co.* (1981), 94 Ill. App. 3d 21, 418 N.E.2d 421, held specifically that there existed a common law tort action for bad faith refusal to make payments. This was for compensatory damages generally but did not include attorney fees provided for under section 155 as it existed prior to 1977.

However, neither *Ledingham* itself, nor the appellate decisions critical of it, considered the exemption problem, and the supreme court was deprived of the opportunity to review *Ledingham* in full. In the supreme court opinion (*Ledingham v. Blue Cross Plan* (1976), 64 Ill. 2d 338, 342, 356 N.E.2d 75, 76-77) it is stated:

> "As earlier indicated, the appellate court reversed the punitive damages award on June 12, 1975. No petition for rehearing was filed, nor was leave to appeal from that judgment

sought by either party."

The supreme court's opinion was thus limited to the question of costs. However, in a later opinion on a different matter, the supreme court did cite *Ledingham* for the proposition that a separate tort action may arise out of conduct which also involves a breach of contract. *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353.

We are then satisfied as to the existence of the common law tort insofar as the stock and mutual companies subject to the Illinois Insurance Code are concerned. *Tobolt* and *Debolt*, in discussing preemption, limited the preemption to punitive damages. *Hoffman* states that section 155 does not preempt compensatory damages. *Lynch* was not required to decide preemption since the events there occurred prior to the amendment of section 155 in 1977.

■ While all of these cases discuss preemption, it is noteworthy that such preemption did not change the nature of the tort but only the items of damage and the amount thereof. Prior to the amendment of 1977, section 155 allowed attorney fees to the prevailing party as part of the taxable costs and put a cap on them; the amount of such costs was not to exceed any of certain specified limitations. (Ill. Rev. Stat. 1975, ch. 73, par. 767.) The amendment of 1977 added to attorney fees as part of the taxable costs "other costs, plus an amount not to exceed ***:" (Ill. Rev. Stat. 1981, ch. 73, par. 767). In general, the recovery remained the same except that the dollar alternative was increased from $1,000 to $5,000. A significant thing is that the predicate for recovery—the nature of the tort—remained the same pre-1977 and post-1977: vexatious and unreasonable delay. The amendment also broadened the liability of the companies by adding to attorney fees and costs an item for unliquidated damages while at the same time putting a limit upon them. It appears to us that public policy, as established by the legislature with the 1977 amendment, is that insurance companies shall be liable for unreasonable and vexatious delay in settling claims beyond the single question of attorney fees. *Lynch* so held as a matter of common law; it spoke of "bad faith," which we believe is the semantic equivalent of vexatious and unreasonable delay.

Given this public policy, the question still remains whether the exemption granted to nonprofit health care service corporations is likewise an immunity from tortious conduct on their part.

We note first that there is no specific immunity granted in the Non-Profit Health Care Service Plan Act. (Ill. Rev. Stat. 1981, ch. 32, pars. 551 through 562i.) In addition, section 4 of that Act (Ill. Rev. Stat. 1981, ch. 32, par. 554) provides:

"A non-profit health care services corporation may be organized in the manner provided for the organization of corporations in 'An Act to revise the law relating to corporations not for pecuniary profit,' approved July 17, 1943, as heretofore or hereafter amended. Any such corporation shall have all the powers, rights and privileges of a corporation organized under said Act except insofar as said provisions are inconsistent with this Act."

Section 5(b) of the General Not for Profit Corporation Act (Ill. Rev. Stat. 1981, ch. 32, par. 163a4(b)) provides:

"Each corporation shall have power:

* * *

(b) To sue and be sued, complain and defend, in its corporate name."

We do not regard the ability to sue and be sued as inconsistent with the purposes and provisions of the Non-Profit Health Care Service Plan Act. It follows that there is no general immunity from suit granted to such corporations.

■ We are therefore of the opinion that such corporations can be sued for tortious conduct. Even if section 155 of the Illinois Insurance Code were to apply, it would not change the result. That section does not eliminate a tort; it only refines it and limits the recovery; exemption from it, if anything, only expands liability. Whether that constitutes proper social policy is a subject which can only be settled by either the supreme court or the legislature. As we have indicated, the supreme court has yet to pass on the matter, and the general legislative policy appears to be one of expansion.

Since the case at bar is only at the initial pleading stage, we cannot divine what affirmative defenses, if any, Blue Cross may be able to raise in answering. Those questions must be resolved by the trial court in due course.

To summarize: the trial court was correct in striking count II which in effect pleaded intentional infliction of emotional distress. We agree that defendant's alleged conduct was insufficient to sustain such a theory. The trial court was correct in striking the prayer for punitive damages in count I for the same reason. The trial court was in error in striking the balance of count I which sought compensatory damages for "bad faith" on the part of the defendant. We have already held that this is the semantic equivalent of vexatious and unreasonable delay, the predicate for the tort. That aspect of the trial court's order is reversed, and the cause is remanded to that court

with directions to allow the defendant to answer count I, sounding in compensatory damages, and for further proceedings in accordance with the views expressed herein.

Affirmed in part, reversed in part, and remanded with directions.

GREEN and MILLER, JJ., concur.