Marie BAGEANIS, Plaintiff,

v.

AMERICAN BANKERS LIFE ASSURANCE COMPANY OF FLORIDA, Defendant.

No. 91 C 1261.

United States District Court, N.D. Illinois, E.D.

Jan. 13, 1992.

Gregory Adam Adamski, Karen Conti, Adamski & Conti, Chicago, Ill., for plaintiff.

Joseph J. Hasman, Ernest W. Irons, David Faulkner Schmidt, Peterson & Ross, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

KOCORAS, District Judge:

This matter comes before the Court on defendant's motion for summary judgment. Jurisdiction is based on diversity. For the following reasons, the motion is denied in part and granted in part.

## BACKGROUND

Plaintiff, Marie Bageanis, filed a five count complaint against defendant, American Bankers Life Assurance Company ("American Bankers"). The basis for her action is that American Bankers has wrongly denied her coverage under a mortgage life insurance policy.

Marie Bageanis and her now deceased husband, Gus Bageanis, applied for a Monthly Renewable Decreasing Term Life insurance policy on July 6, 1988. In this application, the Bageanis' listed themselves as co-insureds and co-beneficiaries.

Prior to applying for insurance, Gus Bageanis had been hospitalized a number of times. On November 3, 1987, Mr. Bageanis was admitted to MacNeal Memorial Hospital. At MacNeal, Mr. Bageanis was diagnosed as suffering from: perforated sigmoid; peritonitis; bilateral aspiration pneumonitis; hypertension; metabolic acidosis secondary to sepsis; sinus tachycardia secondary to sepsis; hypokalemia and persistent leukocytosis postop secondary to possible intra-abdominal abscess. At this time, Mr. Bageanis received treatment in the form of an exploratory laparotomy; sigmoid resection, colostomy and peritoneal lavage; and drainage of abdominal abscess.

After being released, Mr. Bageanis was readmitted to MacNeal Hospital on March 3, 1988 for a colostomy revision with appendectomy. He was discharged on March 10, 1988. Mr. Bageanis, however, was once again readmitted on March 11, 1988. During this stay, he received, among other tests, an abnormal liver function test, the results of which were normal.

After receiving this extensive medical treatment, the Bageanis' decided to apply for life insurance. According to Plaintiff's affidavit, an agent of Homestead Savings told her that she and her husband were eligible for life insurance through the bank notwithstanding Mr. Bageanis' prior health problems. This agent then sent Plaintiff an American Bankers' insurance policy application.

American Bankers' application asked three questions, only two of which are relevant here. The first question asked whether: "During the past 3 years have you had any medical 1) advice, or 2) treatment?" With respect to Mr. Bageanis, the applicants circled number two. The second question asked: "Have you ever had or been treated for 1) alcohol or drug abuse, 2) high blood pressure, 3) cancer, 4) diabetes, or 5) any disorder or disease of the heart, liver, brain, lungs or kidneys?" Again with respect to Mr. Bageanis, the applicants circled number two for high blood pressure.

Below these questions American Bankers provided a small box, approximately one-third of an inch in height and approximately four inches in length, that requested further information. This portion of the application stated:

> If you answered 'yes' to question 1, 2, or 3, circle the condition and give complete details below including physician(s) name and address. If you had or have high blood pressure give the: 1) date and reading of your last blood pressure check; and 2) type of medication.

In Mr. Bageanis' box, beneath these instructions, the applicant wrote "136/80 Dr.

A. March, Stanly [sic] Av., Berwyn, IL 60402 (TENEX)." Nowhere on the application or otherwise did the applicants reveal Mr. Bageanis' recent and extensive prior medical treatment and hospitalizations. As a final matter, both Gus and Marie Bageanis authorized American Bankers to examine their past medical records and history.

Some months later, on September 1, 1988, American Bankers issued Gus and Marie Bageanis the requested insurance policy. Mr. Bageanis subsequently died on August 28, 1990 due to inoperable brain cancer. Plaintiff then sought to have American Bankers pay her mortgage as provided in the policy. After American Bankers refused, she filed suit.

Plaintiff's complaint consists of five counts. Count I seeks a declaratory judgment that the policy is valid and enforceable and that American Bankers is liable to Plaintiff for the policy proceeds. Count II asserts a breach of contract claim. Count III contends that American Bankers breached its implied duty of good faith and fair dealing. Count IV claims that American Bankers violated sections 154.6 and 155 of Illinois' Insurance Code. Finally, Count V alleges that American Bankers violated Illinois' Consumer Fraud and Deceptive Business Practices Act, chapter 121½, section 261.

In response to Plaintiff's complaint, American Bankers filed a counterclaim for rescission and two affirmative defenses. American Bankers' basis for rescission is that the applicants' omissions regarding Mr. Bageanis' prior health and medical history constituted material misrepresentations that affected the risk assumed by American Bankers and that American Bankers would not have issued the insurance policy had it known the true facts.

American Bankers' affirmative defenses relate to Count III and IV of the complaint. American Bankers contends that it is entitled to summary judgment as to Count III because Section 155 of Illinois' Insurance Code preempts any allegation that American Bankers breached its duty of good faith and fair dealing by denying coverage. Additionally, American Bankers seeks summary judgment with respect to Count IV because section 154.6 of Illinois' Insurance Code allegedly fails to provide litigants with a private cause of action. We will discuss each of American Bankers' arguments in turn. Before doing so, however, we must address the appropriate standard by which to judge them.

## DISCUSSION

### A. *Summary Judgment Standard*

Summary judgment is appropriate if the pleadings, answers to interrogatories, admissions, affidavits and other materials show "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue exists if "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A "material fact" exists only if there is a factual dispute that is outcome determinative under governing law. *Id.* at 248, 106 S.Ct. at 2510; *Howland v. Kilquist,* 833 F.2d 639, 642 (7th Cir.1987). The party seeking summary judgment has the initial burden of showing that no such issue of material fact exists.

When a properly supported motion for summary judgment has been made, the opposing party must then "set forth specific facts showing that there is a genuine issue for trial." *Id.* Like the movant, the nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather he must support his contentions with proper documentary evidence. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Howland,* 833 F.2d at 642. Moreover, the opposing party is entitled to the benefit of all favorable inferences that can reasonably be drawn from the underlying facts but not every conceivable inference. *De Valk Lincoln Mercury, Inc. v. Ford Motor Co.,* 811 F.2d 326, 329 (7th Cir.1987). It is light of this

standard that we examine the parties' arguments.

## B. *Rescission*

American Bankers' primary argument for summary judgment is that it is entitled to rescind the insurance contract. Specifically, American Bankers contends that the applicants materially misrepresented Mr. Bageanis' prior medical history and health by omitting certain facts from his application for insurance and that American Bankers would not have issued the insurance had it known the truth. Therefore, American Bankers seeks rescission. Because we conclude that there is a genuine issue of material fact regarding rescission, we deny the motion at this time.

 Rescinding an insurance contract is a complete defense to an action on the policy. Rescission is appropriate if "a representation in an insurance application, which is believed and relied on by the company, is false and material either to the acceptance of the risk or to the hazard assumed by the insurance company." *Massachusetts Mutual Life Insur. Co. v. Reichenthal*, 138 F.Supp. 440, 445 (S.D.Ill. 1956). Incomplete answers or a failure to disclose material information in response to a question in an application may constitute a material misrepresentation. *Garde v. Country Life Insur. Co.*, 147 Ill.App.3d 1023, 101 Ill.Dec. 120, 126, 498 N.E.2d 302, 308 (4th Dist.1986).

 "Materiality" is determined by asking whether reasonably careful and intelligent persons would have regarded the omitted facts as substantially increasing the chances of the events insured against so as to cause a rejection of the application or different conditions, such as higher premiums. *Id.* The materiality of a misrepresentation may be established by the underwriter's testimony or testimony of the insurer's employees. *Id.* A good faith mistake does not excuse a material misrepresentation. *Id.; see also Ratcliffe v. International Surplus Lines Insur.*, 194 Ill. App.3d 18, 141 Ill.Dec. 6, 11, 550 N.E.2d 1052, 1057 (1st Dist.1990) (holding that "it is unnecessary for the insurer to prove that

a misrepresentation was made with the intent to deceive if it was material to the risk assumed"). Furthermore, the fact that a potential insured does not die from the withheld ailment does not affect the materiality of the misrepresentation. *Hatch v. Woodmen Accident & Life Co.*, 88 Ill. App.3d 36, 42 Ill.Dec. 925, 928, 409 N.E.2d 540, 543 (2nd Dist.1980). Finally, although materiality is usually a question of fact, summary judgment is appropriate where the misrepresentation "is of such a nature that there can be no dispute as to its materiality." *Commercial Life Insur. v. Lone Star Life Insur.*, 727 F.Supp. 467, 470 (N.D.Ill.1989).

The court in *Hatch v. Woodmen Accident & Life Co.* was presented with facts very similar to those presented here. In *Hatch*, an insurance applicant wrote that his only prior medical treatment or examination in last five years had been for a sprained ankle. *Hatch*, 42 Ill.Dec. at 927, 409 N.E.2d at 542. In fact, the applicant had visited a doctor and had been hospitalized numerous times for various ailments. *Id.* 42 Ill.Dec. at 927, 409 N.E.2d at 542. The Illinois appellate court affirmed the trial court's opinion granting the insurer's request for summary judgment based on rescission of the policy. *Id.* 42 Ill.Dec. at 927, 409 N.E.2d at 544.

 Applying the rules highlighted above and the *Hatch* court's reasoning, it appears clear that the omissions in Gus and Marie Bageanis' insurance application were material misrepresentations. The application clearly and unambiguously requested "complete details" of "any medical treatment" in the "past 3 years." It is undisputed that the Bageanis' failed to report three prior hospitalizations that involved serious medical procedures. Additionally, an American Bankers' underwriting manager stated in an affidavit that she was unaware of Mr. Bageanis' prior hospitalizations and illnesses and that had this medical history been disclosed "the application would have failed to meet the company's underwriting guidelines; the company would not have underwritten the policy." Plaintiff has presented no evidence to rebut

this statement. Moreover, it appears clear that at the very minimum American Bankers would have charged a higher premium for the policy had Mr. Bageanis disclosed his prior medical treatment. Therefore, we conclude that the Bageanis' made material misrepresentations in their insurance application.

■■■ Plaintiff's argument that all of the answers on the application were truthful and therefore no material misrepresentation occurred must fail. Although the answers provided were true, Illinois law is clear that incomplete answers or a failure to disclose material information in response to a question in an application may constitute a material misrepresentation. *See, e.g., Garde v. Country Life Insur. Co.,* 147 Ill.App.3d 1023, 101 Ill.Dec. 120, 126, 498 N.E.2d 302, 308 (4th Dist.1986). Therefore, we reject Plaintiff's argument that no material misrepresentation occurred because all of the applicants' answers were truthful.

■■■■ Plaintiff's alternative argument that the misrepresentations are somehow mitigated or excused because American Bankers was authorized to examine the applicants' medical history must also fail. Illinois law recognizes that an insurer is under no duty to conduct an investigation into the truthfulness of applicant's responses. *Allender v. Guardian Life Insur. Co.,* 592 F.Supp. 541 (N.D.Ill.1984), *aff'd* 789 F.2d 920 (7th Cir.1986). Indeed, as we have recognized, "[a]n insurance company has the right to rely on the truthfulness of the answers given by an insurance applicant, and the insured has the corresponding duty to supply *complete* and accurate information to the insurer." *Commercial Life Insur. v. Lone Star Life Insur.,* 727

F.Supp. 467, 471 (N.D.Ill.1989) (emphasis added). Therefore, we also reject this argument.[1]

■■■ Despite our conclusion that material misrepresentations existed, summary judgment at this time is inappropriate. We deny the motion because a genuine issue of material fact exists as to whether an agent of American Bankers had knowledge of Mr. Bageanis' past medical history prior to issuing the policy.

> Plaintiff contends in her affidavit that: [s]oon after my husband's hospitalizations, an agent of Homestead Savings advised me that my husband and I were eligible for mortgage life insurance through Homestead Savings. I told her about my husband's hospitalizations for his perforated bowel. She told me that we were still eligible. She sent me a policy application for mortgage life insurance through American Bankers.

Relying on this statement, Plaintiff, in her brief, insists that "agents of American Bankers" knew about and had full knowledge of Mr. Bageanis' hospitalizations prior to issuing the policy. Although Plaintiff's affidavit asserts that an "agent of Homestead Savings," *not* an agent of American Bankers, had knowledge of the prior hospitalizations, American Bankers has in no way responded to the agency issue. Accordingly, we conclude that there is a genuine issue of material fact as to whether an agent of American Bankers had knowledge of Mr. Bageanis' hospitalizations prior to issuing the policy. Summary judgment, therefore, is inappropriate at this time.[2]

## C. *Count III—Preemption*

■■■ American Bankers also seeks summary judgment as to Count III. Count III

---

1. The rule regarding an insured's duty to disclose and report information, expressed in *Allender* and *Commercial Life Insur.,* justifies rejecting Plaintiff's additional argument that she should be excused from providing all relevant information because the application did not provide ample space for complete disclosure. To excuse the insured for such a reason would render the insured's duty as expressed in these cases meaningless and eviscerate any force it would otherwise have. We, therefore, also refuse to accept this argument by Plaintiff.

2. If the party mentioned in Plaintiff's affidavit was not an agent of American Bankers when the alleged conversation took place, then rescission will be appropriate, assuming no new issues arise. If, however, the party was an agent of American Bankers, there would remain the additional legal issue of whether the agent's knowledge of Mr. Bageanis' true medical history would preclude rescission by American Bankers, the principal.

alleges that American Bankers breached its implied duty of good faith and fair dealing by denying coverage and seeks appropriate relief. American Bankers contends that it is entitled to a judgment as a matter of law on this claim because it is preempted by Section 155 of Illinois' Insurance Code. We agree and grant the motion.

Section 155 is entitled "Attorney fees." Ill.Ann.Stat. ch. 73, para. 767 (Smith–Hurd Supp.1991). The relevant portion of the statute authorizes a court to grant a plaintiff attorneys fees and other costs plus the lesser of $25,000 or 25 percent of the amount due under the policy for an insurance company's "vexatious and unreasonable" delay in settling a claim. *Id.*

The Illinois Supreme Court has yet to determine the proper scope of Section 155's preemptive force. Accordingly, we must predict what it would declare the law to be. *Barr Co. v. Safeco Insur. Co.*, 583 F.Supp. 248, 254 (N.D.Ill.1984), *reversed on other grounds*, 706 F.Supp. 616 (N.D.Ill.1989). In so predicting, we must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court would decide the issue at hand. *Id.* While relevant Illinois appellate court cases warrant consideration, they are not controlling *per se. Id.; see also Williams v. Lane*, 826 F.2d 654, 661–62 (7th Cir.1987); *Green v. J.C. Penney Auto Insur. Co.*, 806 F.2d 759, 761 (7th Cir.1986). Rather, they must be followed only if they represent a sound prediction of how the Illinois Supreme Court would decide the issue. *See Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782–83, 18 L.Ed.2d 886 (1967); *McCoy v. Richards*, 771 F.2d 1108, 1110 (7th Cir.1985).

Although the Illinois Supreme Court has not addressed the issue at hand, many other courts on both the federal and state level have. Unfortunately, these courts are not in agreement. The principal debate among these courts is whether Section 155 preempts an insured's claim for compensatory and punitive damages or only punitive damages. *Compare Impex Shrimp &*

*Fish Co. v. Aetna Casualty & Surety*, 686 F.Supp. 183 (N.D.Ill.1985) (Section 155, if applicable, preempts both compensatory and punitive damages claims); *Zakarian v. Prudential Insur.*, 626 F.Supp. 420 (N.D.Ill.1984) (same); *Aabye v. Security–Connecticut Life Insur.*, 586 F.Supp. 5 (N.D.Ill.1984) (same); *Abbott Laboratories v. Granite State Insur.*, 573 F.Supp. 193 (N.D.Ill.1983) (same); *Smith v. Metropolitan Life Insur.*, 550 F.Supp. 896 (N.D.Ill. 1982) (same); *Combs v. Insurance Co.*, 146 Ill.App.3d 957, 100 Ill.Dec. 525, 497 N.E.2d 503 (1st Dist.1986) (same); *Kinney v. St. Paul Mercury Insur.*, 120 Ill.App.3d 294, 75 Ill.Dec. 911, 458 N.E.2d 79 (1st Dist. 1983) (same); *Hamilton v. Safeway Insur.*, 104 Ill.App.3d 353, 60 Ill.Dec. 97, 432 N.E.2d 996 (1st Dist.1982) (same); *Tobolt v. Allstate Insur.*, 75 Ill.App.3d 57, 30 Ill.Dec. 824, 393 N.E.2d 1171 (1st Dist.1979) (same); *Debolt v. Mutual of Omaha*, 56 Ill.App.3d 111, 13 Ill.Dec. 656, 371 N.E.2d 373 (3d Dist.1978) (same) *with American Dental Assoc. v. Hartford Steam Boiler Inspection & Insur.*, 625 F.Supp. 364 (N.D.Ill. 1985) (Section 155, if applicable, only preempts punitive damages claims); *Langendorf v. Travelers State Insur.*, 625 F.Supp. 1103 (N.D.Ill.1985) (same); *Scheinfeld v. American Family Mutual Insur.*, 624 F.Supp. 698 (N.D.Ill.1985) (same); *Chicago HMO v. Trans. Pacific Life Insur.*, 622 F.Supp. 489 (N.D.Ill.1985) (same); *UNR Indus. v. Continental Insur.*, 607 F.Supp. 855 (N.D.Ill.1984) (same); *Barr Co. v. Safeco Insur.*, 583 F.Supp. 248 (N.D.Ill. 1984) (same); *Kohlmeier v. Shelter Insur.*, 170 Ill.App.3d 643, 121 Ill.Dec. 288, 525 N.E.2d 94 (5th Dist.1988) (same); *McCall v. Health Care Service Corp.*, 117 Ill.App.3d 107, 72 Ill.Dec. 640, 452 N.E.2d 893 (4th Dist.1983) (same); *Hoffman v. Allstate Insur.*, 85 Ill.App.3d 631, 40 Ill.Dec. 925, 407 N.E.2d 156 (2nd Dist.1980) (same).

This Court entered the melee in *Premier Electrical Constr. v. United States Fidelity & Guar. Co.*, No. 80C6689, 1985 WL 2386 (N.D.Ill. Sept. 5, 1984 & August 26, 1985). In these two separate memorandum opinions, we agreed with Judge Moran's reasoning expressed in *Barr v. Safeco Insur.*, 583 F.Supp. 248 (N.D.Ill.1984) ("*Barr*

*I*"). Accordingly, we concluded that Section 155, if applicable, only preempted a claim for punitive damages, not compensatory damages.

Although conflicting, these above-mentioned cases do have one fact in common: all were decided prior to the Seventh Circuit's opinion in *Kush v. American States Insur.,* 853 F.2d 1380 (7th Cir.1988). In *Kush,* plaintiff-insured sued his insurance carrier for intentional infliction of emotional distress after it allegedly wrongly denied him coverage under a policy. *Id.* at 1381–82. The insurance company contended that Section 155 preempted this tort action and consequently sought its dismissal. *Id.* at 1382.

After acknowledging the absence of any Illinois Supreme Court authority, the Seventh Circuit held that Section 155, if applicable, pre-empted any claim regardless of whether it sought compensatory or punitive damages. *Id.* at 1385 (concluding that "'*any* count alleging nothing more than the conduct proscribed by Section 155 is pre-empted by the statute'") (quoting *Combs v. Insur. Co.,* 146 Ill.App.3d 957, 964, 100 Ill.Dec. 525, 530, 497 N.E.2d 503, 508 (1st Dist.1986) (emphasis in original)). Importantly, as the quoted language above indicates, the court did not limit its holding to the tort of intentional infliction of emotional distress. Rather, the court stressed that:

> "[it is] not the legal theory [that] plaintiff asserts that ... determines Section 155's preemptive effect. Instead this Court must look beyond such legal theories to the predicate acts or conduct forming the basis for that claim. If the alleged conduct is within the scope of Section 155, the claim is preempted."

*Id.* (quoting *Zakarian v. Prudential Insur.,* 652 F.Supp. 1126, 1136–37 (N.D.Ill. 1987)). Applying this standard, the court found that the core of plaintiff's case was an allegation of "vexatious and unreasonable delay." *Id.* Therefore, the Seventh Circuit concluded that Section 155 preempted the claim for intentional infliction of emotional distress and affirmed the claim's dismissal.

Although one would have believed that the *Kush* decision would have settled the Section 155 preemption dispute, at least among federal district courts, it has not. While no Illinois court has yet addressed the *Kush* opinion, four federal courts have. Of the four decisions, three have followed its mandate. *See York v. Globe Life and Accident Insur.,* 734 F.Supp. 340, 344–45 (C.D.Ill.1990) (claim for bad faith denial of coverage dismissed); *Buehler Ltd v. Home Life Insur.,* 722 F.Supp. 1554, 1564 n. 16 (N.D.Ill.1989) (dicta) (claim for bad faith denial of coverage dismissed); *Barr Co. v. Safeco Insur.,* 706 F.Supp. 616, 617–18 (N.D.Ill.1989) ("*Barr II*") (Moran, J.) (claim for intentional infliction of emotional distress dismissed).

Judge Moran's statements in *Barr II* are particularly noteworthy. In *Barr II,* Judge Moran recognized his earlier ruling in *Barr I* that Section 155 only preempted claims for punitive damages. In reversing his position, Judge Moran held that *Kush* required him to dismiss plaintiff's entire claim that the defendant-insurance company breached its duty of good faith and fair dealing. *Barr II,* 706 F.Supp. at 618. Judge Moran reasoned that *Kush* was "squarely on point" and that:

> [w]e are bound to follow Seventh Circuit pronouncements of the law, including this prediction of what the Illinois Supreme Court would rule. Plaintiff must raise its objection to *Kush's* holding in that court.

*Id.* at 618. Therefore, plaintiff's entire claim was dismissed.

Judge Rovner, however, in *W.E. O'Neil Constr. v. National Union Fire Insur.,* 721 F.Supp. 984, 999 (N.D.Ill.1989), disagreed with Judge Moran's pronouncement in *Barr II.* In *W.E. O'Neil,* Judge Rovner rejected the notion that *Kush* effectively overturned the line of cases in this district that limited Section 155's preemptive force to claims for punitive damages only. Judge Rovner highlighted three reasons for her conclusion. First, she noted that the Seventh Circuit appeared to make a distinction between the torts of bad faith denial of coverage and intentional infliction

of emotional distress. Second, she recognized that the *Kush* court failed to address the case law that it purportedly overruled and its focus on the differences between compensatory and punitive damages. Finally, Judge Rovner indicated that the *Kush* opinion was apparently decided without the benefit of two Illinois appellate court cases decided just prior to *Kush* that reaffirmed the conclusion that Section 155 does not preempt claims for compensatory damages. *Id.* at 999. Therefore, for these three reasons, Judge Rovner disagreed with *Barr II* and found *Kush* not controlling.

We disagree with the *W.E. O'Neil* court, believe Judge Moran's reasoning in *Barr II* to be persuasive, and accordingly find *Kush* controlling. Although we are still inclined to agree with the reasoning expressed in *UNR Indus. v. Continental Insur.*, 607 F.Supp. 855 (N.D.Ill.1984), and *Barr I*, 583 F.Supp. 248, it is inescapable that *Kush* is directly on point. That being so, we are not at liberty to question or disagree with the Seventh Circuit's decision. Only that court, the United States or Illinois Supreme Court or the Illinois legislature may properly do so under these circumstances. We, therefore, conclude that we are compelled to follow *Kush*.

In applying *Kush*'s analytical framework, we note that Plaintiff, in Count III, has alleged that American Bankers' denial of coverage was "willful, malicious, vexatious and unreasonable." This conduct complained of falls within the heart of Section 155. Therefore, we conclude that Section 155 preempts the claim, and summary judgment is granted as to it.

### D. *Count IV—No Private Cause of Action*

American Bankers also seeks summary judgment as to Count IV. Count IV claims that American Bankers violated sections 154.6 and 155 of Illinois' Insurance Code. American Bankers contends that section 154.6 of the Code fails to provide a private cause of action, and therefore summary judgment is proper. Because we agree, we grant summary judgment as to

that portion of Count IV which purports to plead a cause of action based on section 154.6 of the Illinois Insurance Code.

Section 154.6 is entitled "Acts constituting improper claims practice." Ill.Ann. Stat. ch. 73, para. 766.6 (Smith–Hurd Supp. 1991). It is well recognized that this section provides "no private cause of action or remedy beyond those powers given to the State Director of Insurance." *Van Vleck v. Ohio Casualty Insur.*, 128 Ill.App.3d 959, 84 Ill.Dec. 159, 161, 471 N.E.2d 925, 927 (3d Dist.1984); *see also Hoffman*, 40 Ill.Dec. at 928, 407 N.E.2d at 159. We, therefore, lack authority to determine whether American Bankers engaged in any improper claims practices. Summary judgment, therefore, is granted as to Count IV but only to the extent that Plaintiff attempted to plead and prove violations of Section 154.6. That aspect of Count IV which alleges a violation of Section 155 survives American Bankers' summary judgment motion.

### CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment is granted in part and denied in part. The motion is granted as to Count III and that portion of Count IV which purports to allege violations of Section 154.6 of Illinois' Insurance Code.