RITE–RESEARCH IMPROVES the ENVIRONMENT, INC., Plaintiff,

v.

Douglas M. COSTLE, Administrator of the Environmental Protection Agency, the Department of Environmental Regulation of the State of Florida, Dade County Water and Sewer Authority, Metropolitan Dade County and the City of Miami Beach, Defendants.

No. 76–1848–CIV–WMH.

United States District Court, S. D. Florida.

Feb. 21, 1978.

Joseph Z. Fleming, Miami, Fla., for plaintiff.

Terry Cole, Asst. Gen. Counsel, Tallahassee, Fla., Clifford A. Schulman, Asst. County Atty., Miami, Fla., Joseph A. Wanick, City Atty., Miami Beach, Fla., William P. Burns, Asst. Gen. Counsel, Miami, Fla., Mary Ellen Johnson, Asst. U. S. Atty., Miami, Fla., Charles A. Perry, Acting Regional Counsel, Atlanta, Ga., Lisa K. Friedman, Washington, D. C., for defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

HOEVELER, District Judge.

RITE–RESEARCH IMPROVES THE ENVIRONMENT, INC., (RITE) has brought an action against DOUGLAS M. COSTLE, Administrator of the Environmental Protection Agency, THE DEPARTMENT OF ENVIRONMENTAL REGULATION OF THE STATE OF FLORIDA, DADE COUNTY WATER AND SEWER AUTHORITY, METROPOLITAN DADE COUNTY and THE CITY OF MIAMI BEACH, seeking an interpretation of the Federal Water Pollution Control Act Amendments of 1972 (FWPCA) 33 U.S.C. §§ 1151, et seq., to allow construction of a pilot research project on Miami Beach. The "Abelow Plan" as it has been known in this community calls for the discharge of untreated residential waste into the Gulf Stream ("deep current assimilation"). Scientific opinion of the merits of such a plan is divided.

The question before the Court does not concern the scientific validity of the Abelow Plan. Rather the issue raised by the defendants' motions for summary judgment is the plaintiff's standing to maintain this action. For the reasons stated herein, I have concluded that the plaintiff has no standing and that the defendants' motions for summary judgment should be granted.

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies. The concept of standing is part of this limitation." *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26 at 37, 96 S.Ct. 1917 at 1924, 48 L.Ed.2d 450 (1976).

██ The concept of standing does not fall solely within the "case or controversy" requirements of Article III of the Constitution. The so-called "prudential rules of standing" have been invoked in cases involving "generalized grievances" shared in substantially equal measure by all or large

classes of citizens [1] or in those cases where the plaintiffs seek to invoke the *jus tertii*, or rights of third parties.[2]

In *Harrington v. Bush,* 180 U.S.App.D.C. 45, 553 F.2d 190 (1977) four separate areas of judicial inquiry are derived from the Supreme Court cases dealing with the subject of standing. They are briefly: 1) whether the plaintiffs have suffered an injury in fact; 2) whether plaintiffs arguably fall within the zone of interest to be protected or regulated by a given statute; 3) whether some actual or threatened injury results from the putatively illegal action and 4) whether the alleged injury is likely to be redressed by a favorable decision. *See Harrington, supra,* at 60, 553 F.2d at 205 n. 16.

■ As to each area of inquiry—injury, interest, causation, and redressability,—the plaintiffs must allege and show their case comes within its ambit in order to establish standing. (*Harrington, supra,* at 60, 553 F.2d at 205.) Failure to do so as to any one or more areas is fatal.

■ The first and most critical inquiry is the allegation of a "distinct and palpable injury to himself." *Warth v. Seldin, supra,* 422 U.S. at 500, 95 S.Ct. at 2206, 45 L.Ed.2d at 356. *See also, Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). This requirement falls squarely within the purview of Article III. While Congress may grant an express right of standing to persons who would be otherwise barred by the prudential rules of standing, this requirement must always be met. *Warth v. Seldin, supra,* 422 U.S. at 501, 95 S.Ct. at 2206, 45 L.Ed.2d at 356. *See also, Simon v. Eastern Ky. Welfare Rights Org., supra,* 426 U.S. at 41 n. 22, 96 S.Ct. at 1926 n. 22, 48 L.Ed. at 462 n. 22.

■ When the plaintiff is an association, as in this case, a non-profit corporation, it must show that it has suffered harm or that one or more of its members has suffered harm. *Warth v. Seldin, supra; Sierra Club v. Morton, supra.*

In its verified complaint, RITE alleges that it is a "non-profit organization whose members are committed to the installation of a research pilot project to demonstrate the accumulated store of knowledge acquired by recent research . . . " Its membership includes Miami Beach taxpayers, residents and homeowners. These members, it is asserted, have been "effectively denied the right to obtain the best practical technology for improving the environment at the most reasonable cost," by the defendants.

By its action, RITE "seeks to protect for itself and its members" the estuarine areas of Biscayne Bay and the ocean "for fishing, swimming and recreational activities."

The specific injuries alleged by RITE are "the lack of opportunity to learn the results of the proposed deep current assimilation project . . . ," the waste of "billions of scarce tax dollars," because of inadequate research . . . , and erosion of "the role of the judiciary as a bulwark of the people against bureaucratic excess and illegalities . . . "

RITE seeks entry of a declaratory judgment setting forth an interpretation of the FWPCA to allow deep current assimilation as an alternative to the existing Environmental Protection Agency interpretation requiring secondary treatment of sewage. The Court is requested to limit its declaration "to the unique facts involved here so that there is no possibility that in other areas which do not have the same unique geographical and sewage characteristics of the City of Miami Beach . . . " will attempt "to apply the results of this case in a manner . . . disruptive of the sewage treatment provisions of the FWPCA without similar extensive research as performed in this situation."

Additionally, RITE seeks to invoke this Court's injunctive power on behalf of the City of Miami Beach to insure that the city

---

1. *E. g., Schlesinger v. Reservists to Stop the War,* 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974).

2. *See, Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

fathers can freely decide whether or not they wish to participate in a research project instead of honoring established contractual commitments requiring link-up with the Virginia Key Sewage Treatment Plant.

The question is presented as to whether the plaintiff has alleged such a " 'personal stake in the outcome of the controversy' so as to warrant [its] invocation of federal-court jurisdiction"? *Warth v. Seldin, supra,* 422 U.S. at 498, 95 S.Ct. at 2205, 45 L.Ed.2d at 354. It seems clear that neither RITE nor its members have done so.

■■ Federal courts should not decide, "abstract questions of wide public significance." *Warth v. Seldin, supra,* at 500, 95 S.Ct. at 2206, 45 L.Ed.2d at 355. RITE's prayer to limit the declaratory relief sought to the particular facts of this case seems to recognize this principle. Such an approach, however, does not enliven an already defective assertion of injury. The injuries alleged are simply too abstract to constitute an "injury in fact" to this plaintiff or its members.

■ Plaintiff also argues that the City of Miami Beach, a party defendant, has conferred standing upon it. Certainly, the City's actions in this case have been interesting. At the status conference on September 8, 1977, counsel for the City took exception to plaintiff's contention that the City had been "economically blackmailed" by the EPA and others. At the hearings on the various motions for summary judgment, the City was completely silent. The City did not, and has not to this day, withdrawn its motion for summary judgment. The City has never asked the Court to re-align it as a party plaintiff and yet, it is asserted it agrees that RITE has standing. It seems clear, however, that the City cannot confer standing on the plaintiff.

■ The Court is unable to locate any case where, as here, a plaintiff has sought to invoke a claim of standing of a party before the Court. Accordingly, the general requirement that a plaintiff must assert his own legal rights and interests and not those of third persons, ought to be given greater force when those third parties are in fact before the Court and able to assert their own claims.

Lastly, even if the plaintiff had established the existence of an "injury in fact," the Court could not grant the relief requested.

■ The requirement that the injury "is likely to be addressed by a favorable decision" has not been met. Plaintiff seeks to have its abstract interest in environmental protection and research converted into a declaration that deep current assimilation is allowable under the FWPCA, but such declaration does not make it reasonably likely that its goal of a pilot project on Miami Beach will be met. It asks the Court to speculate that in the event the declaratory and injunctive relief sought are granted, 1) the City of Miami Beach will decide to dishonor existing commitments and permit such a project, 2) the City of Miami Beach can overcome engineering hurdles in connection with pipe already installed in anticipation of eventual link-up with Virginia Key, 3) the City of Miami Beach will decide that the pilot project, with or without federal and state funding, is more economical than the existing project, 4) the State of Florida will waive its laws prohibiting the dumping of untreated waste in the ocean, and 5) Dade County ordinances to the like effect will be waived.

The Court cannot indulge in such speculation. It thus cannot "reasonably be supposed that the remedy, if granted, will inure" to plaintiff or its members. *Warth v. Seldin, supra,* at 515, 95 S.Ct. at 2213, 45 L.Ed.2d at 364.

The defendants' motions for summary judgment are granted. No costs.

DONE AND ORDERED in Chambers at Miami, Dade County, Florida this 21 day of February, 1978.