NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH,
PA., Plaintiff,

v.

CONTINENTAL ILLINOIS
CORPORATION, et al.,
Defendants.

HARBOR INSURANCE COMPANY and
Allstate Insurance Company, Plaintiffs,

v.

CONTINENTAL ILLINOIS
CORPORATION, et al.,
Defendants.

Nos. 85 C 7080, 85 C 7081.

United States District Court,
N.D. Illinois, E.D.

Nov. 28, 1986.

See also 652 F.Supp. 867.

James G. Hiering, Dennis C. Waldon, Jeffrey I. Berkowitz, Richard L. Reinish, A. Benjamin Goldgar, Keck, Mahin & Cate, Chicago, for plaintiff.

H. Blair White, Walter C. Carlson, Darlene A. Vorachek, Jon Fieldman, Sidley & Austin, Gary L. Prior, Edward F. Michalak, Kevin T. Keating, McDermott, Will & Emery, Timothy A. Nelson, Michael A. Weinberg, Charles L. Glick, Skadden, Arps, Slate, Meagher & Flom, Roger W. Barrett,

Franklin P. Auwarter, Michele Odorizzi, Mayer, Brown & Platt, Chicago, for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Harbor Insurance Company ("Harbor"), Allstate Insurance Company ("Allstate") and National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") have sued Continental Illinois Corporation ("CIC"), its subsidiary Continental Illinois National Bank and Trust Company of Chicago ("Bank")[1] and a host of other defendants, seeking to avoid liability under the directors and officers' ("D & O") policies plaintiffs (collectively "Insurers") had issued to CIC.[2] Insurers have moved to dismiss under Rule 12(b)(6), or in the alternative to strike under Rule 12(f), most of the counterclaims[3] of defendants Continental, Roger E. Anderson ("Anderson"), George R. Baker ("Baker"), Gerald K. Bergman ("Bergman"), Edwin J. Hlavka ("Hlavka"), Donald C. Miller ("Miller"), John H. Perkins ("Perkins"), Richard C. Rastetter ("Rastetter"), John A. Redding ("Redding") and David G. Taylor ("Taylor").[4] For the reasons stated in this memorandum opinion and order, Insurers' motions are granted in part and denied in part.

### *"Joint" Counterclaims*

Anderson, Baker, Miller, Perkins, Rastetter and Redding have filed counterclaims (the "joint counterclaims") that are essentially identical and can be examined togeth-

---

1. CIC and Bank are collectively called "Continental."

2. Because this Court has typically begun all its opinions in these cases with the same opening description, some means of early differentiation is useful. Solely for that purpose, it is noted this is this Court's fourteenth written opinion since the cases were assigned to its calendar after a series of recusals by other judges of this District Court.

3. No dismissal is sought as to Count IV of the Rastetter or Hlavka counterclaims, each of which alleges a breach of contract by Insurers.

4. Because these are separate actions (one by Harbor and Allstate as plaintiffs, the other by National Union), most defendants have in fact filed two substantively identical counterclaims. There are, however, two exceptions: In addition to their pairs of such counterclaims, each of Continental and Taylor has filed a separate counterclaim against Harbor (referred to respectively as the "Continental-Harbor counterclaim" and the "Taylor-Harbor counterclaim").

er for current purposes. Each of those counterclaims other than Rastetter's (see nn. 3 and 4) has three counts:

1. Count I asserts a claim for breach of each Insurer's implied duty of good faith and fair dealing (the "bad faith" claims).

2. Count II advances a claim under the Illinois Consumer Fraud and Deceptive Practices Act, Ill.Rev.Stat. ch. 121½, ¶ 270a (the "consumer fraud" claims).

3. Count III seeks relief under Illinois Insurance Code § 155, Ill.Rev.Stat. ch. 73, ¶ 767 (the "Section 155" claims).

■ Insurers contend the bad faith claims have been preempted by Section 155, which provides statutory damages for an insurer's vexatious or unreasonable actions. Indeed, this Court dismissed a comparable bad faith claim for that very reason in *Abbott Laboratories v. Granite State Insurance Co.,* 573 F.Supp. 193, 194–95 (N.D.Ill.1983): It followed the law of the Illinois Appellate Court for the First District (see *Tobalt v. Allstate Insurance Co.,* 75 Ill.App.3d 57, 30 Ill.Dec. 824, 393 N.E.2d 1171 (1st Dist.1979)) despite some divergent views elsewhere among the Appellate Districts. Nothing since *Abbott* gives cause to depart from its reasoning (see 573 F.Supp. at 196–200).

Defendants urge only partial preemption should apply, however. They point to a few cases holding Section 155, though it may preempt bad faith claims for punitive damages, does not foreclose the recovery of compensatory damages. See, e.g., *UNR Industries, Inc. v. Continental Insurance Co.,* 607 F.Supp. 855, 866–68 (N.D.Ill.1984);

*McCall v. Health Care Service Corp.,* 117 Ill.App.3d 107, 72 Ill.Dec. 640, 452 N.E.2d 893 (4th Dist.1983). But given the First Appellate District matrix of these actions,[5] those cases are irrelevant in the face of the current First Appellate District decision in *Combs v. Insurance Co. v. Illinois,* 146 Ill.App.3d 957, 100 Ill.Dec. 525, 497 N.E.2d 503 (1st Dist.1986), which cited this Court's decision in *Abbott Laboratories* favorably (*id.* at 962, 100 Ill.Dec. at 529, 497 N.E.2d at 507) and reiterated its own pronouncement in *Trautman v. Knights of Columbus,* 121 Ill.App.3d 911, 915, 77 Ill.Dec. 294, 297, 460 N.E.2d 350, 353 (1st Dist.1984) (ellipsis in original):

> [S]ection 155 of the Illinois Insurance Code ... preempts the filing of a common law action for breach of an implied covenant of good faith and fair dealing, and limits damages to that amount stated in the pertinent provisions of the Code.

That unequivocal reaffirmation that Section 155 "has pre-empted the field" (146 Ill.App.3d at 962, 100 Ill.Dec. at 529, 497 N.E.2d at 507) controls here.[6] All the bad faith claims are dismissed in their entirety on preemption grounds.

■ Defendants' consumer fraud claims [7] fare no better, though for a wholly different reason. Although all the counterclaims do not make this clear, each Count II alleges that because Insurers assertedly violated Act § 262 by failing to fulfill the promises made in selling the D & O policies to CIC, each defendant now has a cause of action for damages under Act § 270a.

---

5. This Court's numerous opinions on the application of *Erie v. Tompkins* principles where there is a division of views among Illinois Appellate Districts (see, e.g., *Abbott,* 573 F.Supp. at 195, 196–200 and, most recently, *Rizzo v. Means Services, Inc.,* 632 F.Supp. 1115, 1131–33 (N.D. Ill.1986)) explains which of those views controls under the *Thorpe-Garcia* mandate referred to in those opinions. These actions are so totally Chicago-oriented that the First Appellate District is the clear answer.

6. Any potential doubt (if it indeed existed) as to the First District's position generated by *Kaniuk v. Safeco Ins. Co.,* 142 Ill.App.3d 1070, 97 Ill.Dec.

156, 492 N.E.2d 592 (1st Dist.1986) has thus certainly been resolved. *Kaniuk* had simply refrained from deciding whether Section 155 precluded assessment of compensatory damages and, if so, whether the statute was unconstitutional—plaintiffs there had not sought to state a claim for compensatory damages, so the issues were not properly before the court.

7. For convenience all references to the consumer fraud statute (the "Act") will take the form "Act § —," referring to the Chapter 121½ citations rather than the Act's internal numbering.

Those claims contain their own death warrant. Defendants' self-characterization as "consumers" within the meaning of the Act is belied by the Act § 261(e) definition of a "consumer" as (emphasis added):

> any person who *purchases* or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household.

Only a "consumer" can make a claim under Act § 270(a), *Steinberg v. Chicago Medical School*, 69 Ill.2d 320, 328, 13 Ill. Dec. 699, 703, 371 N.E.2d 634, 638 (1977), and here it was CIC that purchased the D & O policies. Beneficiary status under the D & O policies is not enough [8]; cf. *McCarter v. State Farm Mutual Automobile Insurance Co.*, 130 Ill.App.3d 97, 85 Ill.Dec. 416, 473 N.E.2d 1015 (3d Dist.1985) (injured party not allowed to bring statutory action against insurer of tortfeasor/purchaser).

There is a second and independent ground for rejecting the "consumer fraud" claims. Though statutory labels are not necessarily controlling—for legislators, like patentees, can be their own lexicographers—it strains normal language usage to speak of an individual commercial purchaser of an individual D & O policy in a one-on-one (that is, separately negotiated) transaction as somehow being a "consumer" intended to be protected by a "consumer fraud" statute such as Illinois'. And it is therefore unsurprising that the case law has rejected application of the Illinois statute to situations like that involved here. See this Court's opinion in *Newman-Green, Inc. v. Alfonzo Larrain R.*, 590 F.Supp. 1083, 1085–88 (N.D.Ill.1984) and cases cited there. Courts (including a number, in Illinois and elsewhere, that have specifically cited and followed *Newman-Green*) contin-

ue to read the statute that way. Thus even were defendants able to sue as "purchasers" or third-party beneficiaries (as they are not, for the reason stated earlier), they would be out of court for this separate reason.

In short, all the consumer fraud counterclaims are dismissed as well. And as this opinion later reflects, that dismissal also controls similar counterclaims by other defendants.

■ Next this opinion turns to the Count III joint counterclaims, which invoke the selfsame Section 155 that sounded the death knell for the Count I bad faith claims. Defendants say certain conduct by Insurers was vexatious and unreasonable, triggering recovery of statutory damages and attorneys' fees under Section 155.

Insurers respond by pointing to the hold-harmless effect of the settlement agreements in the underlying securities litigation, by reason of which they say defendants have not suffered any "actual" damages because of Insurers' allegedly unreasonable conduct. Insurers argue "actual" damages are a necessary element for a Section 155 claim because Section 155(a) and (c) presume a plaintiff is "entitled to recover" from the insurer.[9]

Though that may be a fair comment on the two subsections to which Insurers refer, those provisions do not tell the whole story. Subsections 155(1)(a) and (c) are alternative methods of establishing the ceiling amount of statutory damages. Subsection 155(1)(b), which Insurers ignore, clearly contains no "entitled to recover" requirement. And what controls for present purposes is that current Illinois case law (*Kaniuk v. Safeco Insurance Co. of Illinois*,

---

**8.** Standing to sue for breach of contract as third party beneficiaries of the D & O policies is irrelevant in determining standing to sue under the act's statutory definition. Indeed, the distinction is fortified by the Illinois General Assembly's obvious consideration, and limited coverage, of persons other than the direct purchaser (note the "member of his household" exception to the strict privity language of Act § 261(e)).

**9.** It might also be possible to read Insurers as arguing that defendants' assignment of their rights to D & O insurance as part of the settlement agreement caused them to lose any rights they had under Section 155. But any such contention must fail: Defendants' assignments were expressly limited to the proceeds of the D & O policies, and an entitlement to recovery under the policies is not a prerequisite to recovery under Section 155.

142 Ill.App.3d 1070, 1074, 97 Ill.Dec. 156, 158, 492 N.E.2d 592, 594 (1st Dist.1986)) refutes Insurers' position:

> [Section 155] allows plaintiffs to recover punitive damages [10] from for-profit insurers in addition to attorney fees, without proving any right to compensatory damages.

Hence Insurers' motions to dismiss defendants' Section 155 claims are denied.

One of those claims is partially flawed, however: Baker's prayer for contractual and punitive damages of $50 million. Because Section 155 damages are expressly limited to those provided for in the statute,[11] Baker's prayer for relief is stricken, to be replaced by one for statutory damages.

### Other Bad Faith Claims

■ Continental, Bergman, Hlavka and Taylor have also filed counterclaims [12] based on an Insurer's alleged breach of its implied duty of good faith and fair dealing. True enough, any such bad faith claims are also preempted by Section 155, and the counterclaims do not alternatively assert a right to relief under that statute. That, however, does not automatically compel dismissal of the counterclaims. Instead the Rule 12(b)(6) standard is that stated in *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984):

> A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.

Thus the question is not whether the counterclaims mention Section 155 (they do not) but whether their allegations, if proved, would support relief under that statute.

Taylor's counterclaims, which contain the skimpiest allegations, claim Taylor has been injured because of Insurers' course of action designed solely to postpone the need to make payments under the D & O policies—actions that have forced Taylor to defend himself against allegedly frivolous accusations (Taylor-Harbor Counterclaim ¶¶ 216, 217; Taylor-National Union Counterclaim ¶¶ 197, 198). Illinois courts have not established a definition for vexatious and unreasonable conduct under Section 155. According to *Donnelly v. Washington National Insurance Co.*, 136 Ill. App.3d 78, 91, 90 Ill.Dec. 605, 615, 482 N.E.2d 424, 434 (1st Dist.1985), quoting *Fassola v. Montgomery Ward Insurance Co.*, 104 Ill.App.3d 825, 832, 433 N.E.2d 378, 383 (3rd Dist.1982) (citation omitted, brackets in original):

> The question of vexatious [conduct] is a factual one, which must be based upon an assessment of the totality of the circumstances, taken in broad focus.

This Court cannot say as a matter of law that Taylor's allegations (and the similar allegations by Continental, Bergman and Hlavka), if proved at trial, would not establish vexatious or unreasonable conduct by Insurers within the meaning of Section 155. Consequently Insurers' motions to dismiss those counterclaims are denied—*if* the counterclaims are promptly amended to draw solely on Section 155 as their source of relief.

---

**10.** *Kaniuk* uses the term "punitive damages" to describe Section 155's statutory damages, precisely because those damages are not compensatory in nature. If Insurers are right in saying a defendant is not "entitled to recover" *any* amount (an issue this Court need not now decide on the present Rule 12(b)(6) motion), the recoverable damages would be the least of the three Section 155 alternatives—zero—but "reasonable attorney fees" could still be recovered under the statute.

**11.** As Insurers point out, Section 155 was recently amended and the statutory limit on damages was increased from $5,000 to $25,000. It is not now necessary to decide which limit (if either, see n. 10) applies to defendants' statutory damages claims.

**12.** These are Continental-Harbor Counterclaim Count IV, the Continental-National Union Counterclaim, Taylor-Harbor Counterclaim Count II, the Taylor-National Union Counterclaim, Bergman Counterclaim Count II and Hlavka Counterclaim Count I.

*Continental's Counterclaims*

■ Harbor asks that Counts I, II and III of the Continental-Harbor Counterclaim [13] be dismissed:

1. Count I seeks reimbursement from Harbor under its D & O policy for attorneys' fees advanced by Continental to its former officers-directors [14] for the defense of the underlying securities litigation.

2. Count II seeks a declaratory judgment that Harbor must reimburse Continental for future advances to its former officers-directors.

3. Count III seeks, as an alternative, a judgment for the fees Continental has advanced to those officers-directors who have been successful on the merits in the underlying securities litigation and are thus definitely entitled to the fees Continental advanced to them conditionally.

Harbor says those counts do not establish an actual controversy as required by the Declaratory Judgment Act, 28 U.S.C. § 2201. It appears to claim a December 13, 1983 agreement between Harbor and Continental (the "1983 Agreement") has modified Harbor's obligations under its D & O policy, so Harbor has completely satisfied its duty to reimburse Continental for legal fees.

Continental does not dispute Harbor's fulfillment of its obligations under the 1983 Agreement. But that of course is not the issue, and Continental properly rejects Harbor's position that the 1983 Agreement somehow modified Harbor's obligations under its D & O policy.

Harbor's reading of the 1983 Agreement is truly "frivolous" in the legal sense,[15] and even if it had any merit (as it does not) it creates factual issues that would bar Rule 12(b)(6) disposition. Under the 1983 Agreement Harbor agreed to reimburse Continental conditionally for one-half the amounts Continental was advancing to its former officers-directors for their defense of the underlying securities litigation. Continental's advances and reimbursements were expressly conditioned on the former officers-directors eventually becoming legally entitled to indemnification from Continental for those amounts.

Paragraph 4 of the 1983 Agreement provides:

> Neither the execution, delivery, or performance of any of the terms, provisions or conditions herein shall constitute a waiver of or shall invalidate any of the terms, provisions or conditions of the Policy or constitute a waiver of any rights either we or any of the insureds may claim to have under and with respect to the Policy.

"Boilerplate" (as Harbor would have it) or not, that language could not be more clear: Harbor's ultimate liability to Continental continues to be determined by the terms of Harbor's D & O policy. Because Harbor has not fulfilled, and claims it need not fulfill, all these obligations, an actual controversy exists between Harbor and Continental.[16]

---

13. Continental counterclaims against Harbor alone because Harbor is responsible for the first $15 million in D & O coverage.

14. This term is used to describe the group of individuals who have served in either or both of those capacities.

15. This Court is as tired as Insurers and their counsel must be of labeling their arguments as "frivolous" or with like adjectives. Though some of the 14 opinions (including this one) authored by this Court have resulted in partial or total victories by Insurers, most have not—and all too often that has been so because the positions advanced by Insurers' counsel were not even specious, let alone fairly arguable. There is one sure way for counsel to stanch the flow of adverse rulings: Stop making arguments that cannot be made in good conscience.

In this instance, faced with a contractual provision that gives the lie to the position they want to assert—and that appears in a contract actually entered into between the knowledgeable lawyers for large and sophisticated corporations, and that deals with a current rather than a hypothetical future problem (actually pending, big-ticket litigation)—counsel responds only by labeling that squarely-applicable provision "boilerplate." This is the sort of stuff that led to the expansion of Rule 11's coverage to embrace lawyers' objectively unreasonable conduct.

16. Harbor also briefly argues Count II is moot because the underlying litigation for which Continental was advancing fees has been settled. Even apart from the questionable nature of that argument as such, it ignores the fact the 1983 Agreement applies to three different lawsuits, only one of which Harbor says has been settled.

Insurers' argument (R. Mem. 24) that the 1983 Agreement "represents the final word, at least as to payments already made" [17] is belied not only by the unequivocal so-called "boilerplate" [18] but by all the other terms of the brief Agreement. What the 1983 Agreement speaks of is simply "funding" and "advances"—normally the language used in speaking of interim rather than definitive final arrangements. True to that normal usage, 1983 Agreement ¶ 3 obligates Continental to "repay to Harbor the advances made by Harbor pursuant to this undertaking" if it turns out Continental and its officers-directors are not entitled to payment under the D & O policy. Yet Harbor's lawyers would have it Continental, solely in exchange for the value of the use of money amounting to the advance of one-half the fees and expenses (the only arguable benefit it derived under the 1983 Agreement), surrendered its entire substantive right to recovery under the Harbor D & O policy! And to buy that argument, this Court is asked to excise from the 1983 Agreement a specific provision that says exactly the opposite.

 In addition to its empty argument as to all of Counts I, II and III, Harbor also urges Count III should be dismissed because:

 1. None of the officers-directors to whom Continental advanced fees have been successful on the merits.

 2. Those officers-directors are thus not legally entitled to indemnification from Continental.

 3. Continental therefore cannot seek reimbursement from Harbor for the advances.

Harbor bases that line of reasoning on *Galdi v. Berg,* 359 F.Supp. 698 (D.Del. 1973), where a former officer-director dismissed without prejudice was held not "successful on the merits or otherwise" (the Delaware statutory language) for indemnification purposes. But *Galdi, id.* at 702 did so because the without-prejudice dismissal had been triggered only by the pendency of the identical claim in another court:

> The charge was simply erased in this case because the charge against Power is being litigated by Scotten in other litigation. It was simply unnecessary from the standpoint of sound judicial administration to have the same issue pending in this court. Certainly, a dismissal without prejudice solely because the same charge is being litigated in other presently pending actions does not fall within the underlying purpose of § 145.

> \* \* \* \* \* \*

> The Court concludes here that when a case is dismissed without prejudice so that the same issue may be litigated in another pending case, an indemnification award would be premature and contrary to the spirit of the statute.

*Galdi* also reaffirmed the Delaware case law holding the "successful on the merits or otherwise" standard calls for a case-by-case factual examination (*id.*).

Here Continental alleges the former officers-directors were dismissed without prejudice from the underlying securities litigation because of lack of evidence, so the securities-action plaintiffs do not intend to refile the claims against them.[19] That alle-

---

**17.** 1983 Agreement ¶ 5 permits either Harbor or Continental to terminate the advance funding arrangement for future payments on 30 days' notice.

**18.** At the risk of kicking a dead horse, it is worth observing the 1983 Agreement was a typewritten letter agreement entered into directly between the *lawyers* for the parties; it was a two-page five-paragraph agreement in which the "boilerplate" was the fourth paragraph; and the letter was prepared by Harbor's lawyer. It is difficult to convey just how intellectually pover-

ty-stricken Harbor's argument is in the entire setting it occupies.

**19.** "Without prejudice" dismissal remains an understandable disposition under such circumstances. If a plaintiff is satisfied no facts have emerged to suggest a defendant's liability, but wishes out of caution to preserve a claim on the remote prospect that other facts may come to light in the future, both sides may be satisfied with such a dismissal (defendant being comfortable in the knowledge there is no realistic possibility the claim will be reasserted).

gation (taken as true on a Rule 12(b)(6) motion) precludes this Court's ruling, as a matter of law, the former officers-directors were not "successful on the merits or otherwise." That issue too must be decided as a factual matter.

In summary, Harbor fails on all fronts. Its motion to dismiss Counts I, II and III of the Continental-Harbor Counterclaim is denied.

### Taylor-Harbor Counterclaim

Harbor also moves to dismiss Count I of the Taylor-Harbor Counterclaim. There Taylor seeks a declaration of:

1. Harbor's liability *to Continental* for the legal fees Continental advanced to him and

2. Harbor's liability *to Taylor* for any legal fees that *may* not be indemnified by Continental in the future.

■ As for Taylor's first request, normally a party has standing to assert only that party's own rights. *Jones v. Illinois Department of Rehabilitation Services*, 689 F.2d 724, 733 (7th Cir.1982). Any rationale for departure from that rule vanishes when the third party whose rights are at issue is also before the court and able to speak for itself. *Rite-Research Improves the Environment, Inc. v. Costle*, 78 F.R.D. 321, 324 (S.D.Fla.1978). Continental is in fact a party litigant asserting its own claims against Harbor here, and Taylor has no standing to do the same.

■ Though Taylor's second request for a declaration of rights does not suffer from the same flaw, it has an equally fatal defect. It rests on a totally speculative future event: Continental's possible future

cessation of its past indemnification practice, which would then force Taylor to seek indemnification directly from Harbor. This Court has already held such "iffy" allegations fail to create a justiciable controversy in Article III terms. 110 F.R.D. 615, 618–19.

Harbor wins one. Count I of the Taylor-Harbor Counterclaim is dismissed.

### Hlavka Counterclaims

Hlavka has filed six-count counterclaims against Insurers. Insurers seek to dismiss five of those counts (all except the Count IV breach-of-contract claims), four of which remain to be dealt with.[20] Those are for breach of fiduciary duty (Count II), for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill. Rev.Stat. ch. 121½, ¶¶ 261–270a (Count III), for willful and wanton conduct (Count V) and for an unreasonable refusal to settle (Count VI). They will be dealt with in turn.

■ Insurers first contend for dismissal of Count II because no fiduciary relationship existed between them and Hlavka. Under Illinois law no fiduciary relationship ordinarily exists between an insurer and its insured (*Robocki v. Allstate Insurance Co.*, 127 Ill.App.3d 294, 297, 82 Ill.Dec. 471, 473, 468 N.E.2d 1251, 1253 (1st Dist. 1984)),[21] and Hlavka has alleged no facts that might establish such a relationship in this instance.

Hlavka alleges, and Insurers admit, he provided them with confidential information from the underlying securities litiga-

---

**20.** Insurers' motion to dismiss the Count I bad faith claims has already been denied.

**21.** Hlavka says *Ballard v. Citizens Casualty Co.*, 196 F.2d 96, 102 (7th Cir.1952) and *Bailey v. Prudence Mutual Casualty Co.*, 429 F.2d 1388, 1390–91 (7th Cir.1970) support the existence of a fiduciary relationship between an insurer and its insured. To be sure those cases say so, but they cite no Illinois law in support of that proposition. In these diversity actions this Court is not obligated to follow our Court of Appeals'

generalized statements in the face of recent Illinois case law to the contrary. And Hlavka's other citations are to cases finding an insurer's implied duty of good faith—but that does *not* import a fiduciary duty. *Robocki*, 127 Ill. App.3d at 297, 82 Ill.Dec. at 473, 468 N.E.2d at 1253 says flatly:

An implied duty of good faith and fair dealing has never been held to constitute a fiduciary duty.

tion. But that was no more than Hlavka was contractually bound to do under the terms of the D & O policies (which contractual performance *Robocki, id.* specifically contrasts with any fiduciary relationship). And *Robocki* is only representative of the line of Illinois authority finding no fiduciary duties in such situations (see *Seaboard Seed Co. v. Bemis Co.*, 632 F.Supp. 1133, 1135–37 (N.D.Ill.1986) and cases cited and quoted there). Hlavka's Count II claims are dismissed.

As for Hlavka's Count III, this opinion's earlier discussion as to the joint consumer fraud counterclaims applies to Hlavka's as well. His claim too is dismissed because he is not a "consumer"—CIC and not Hlavka purchased the D & O policies—and because of the absence of a "consumer" class.

Hlavka Mem. 2 n. * acknowledges his Count V assertion of Insurers' willful and wanton misconduct "may no longer state a viable claim" in light of *Morrow v. L.A. Goldschmidt Associates, Inc.*, 112 Ill.2d 87, 96 Ill.Dec. 939, 492 N.E.2d 181 (1986). He is right. It does not, and Count V too is dismissed.

Finally, Hlavka's Count VI makes a second bad faith claim. This one, however, is not redundant. Count I is based on Insurers' conduct that allegedly fraudulently encouraged Hlavka and the other defendants to continue litigating the underlying securities claim, while Count VI is based on Insurers' allegedly unreasonable refusal to settle. Just as Count I's allegations may establish a Section 155 claim, so Count VI's distinct allegations might also entitle Hlavka to Section 155 relief. Because the assertedly unreasonable conduct in Counts I and VI is different, the two counts are not duplicative and the motion to dismiss or strike Count VI is denied.[22]

### Bergman Count I

Insurers' final attack is directed at Count I of the Bergman counterclaims, where he

asks for attorneys' fees under the "American Rule" for his defense of these cases. Whether Bergman is indeed calling on the common-law fee-shifting doctrine or making a claim under Rule 11, no independent cause of action is involved. Such relief is properly invoked by motion at the end of the litigation if Bergman is successful. Count I of Bergman's counterclaims is dismissed.

### Conclusion

Insurers' motions to strike or dismiss defendants' counterclaims are granted in part and denied in part:

1. Counts I and II of the Anderson, Baker, Miller, Perkins, Rastetter and Redding's counterclaims are dismissed.

2. Count I of Taylor's counterclaim against Harbor is dismissed.

3. Counts II and III of Hlavka's counterclaims are dismissed, and his Count V is stricken.

4. Count I of Bergman's counterclaims is dismissed.

5. Insurers' motions are denied in all other respects.

To the extent any surviving counterclaim must be amended to conform to this opinion, that shall be done on or before December 12, 1986. Insurers shall answer those amendments on or before December 24, 1986 (no fully self-contained amended answers are called for).

---

**22.** Hlavka must, however, also amend Count VI to clarify the basis for relief.