MARYLAND INSURANCE
COMPANY, Plaintiff,

v.

ATTORNEYS' LIABILITY
ASSURANCE SOCIETY,
LTD., Defendant.

No. 90 C 3999.

United States District Court,
N.D. Illinois, E.D.

Sept. 26, 1990.

---

George L. Saunders, Lee A. Monroe, Thomas F. Bush, Jr., Saunders & Monroe, Chicago, Ill., Thomas W. Brunner, Walter J. Andrews, Jo Anne B. Hennigan, Wiley, Rein & Fielding, Washington, D.C., for plaintiff.

Michael R. Feagley, Paul A. Fitzsimmons, Marc E. Rosenthal, Mayer, Brown & Platt, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Maryland Insurance Company ("Maryland") has filed a declaratory judgment action against Attorneys' Liability Assurance Society, Ltd. ("ALAS") as to their respective rights and duties in connection with a lawsuit pending against a party that may or may not be covered by one of Maryland's insurance policies. ALAS has moved (1) to dismiss the action for lack of an Article III "case or controversy" or, if unsuccessful on that score, (2) to transfer the action to the United States District Court for the Western District of Texas. For the reasons stated in this memorandum opinion and order, ALAS' motion to dismiss is granted.

Both Maryland and ALAS are potentially liable as insurers in a major legal malpractice action (the "Underlying Action") brought in Texas against a law firm ("Law Firm") whose home base is located there. That Underlying Action is said to be close to settlement, but—and this is the critical fact—it is not yet settled. Maryland has committed itself to advance a large contribution to the pot in the proposed settlement, without prejudice to its right to con-

test the question whether its own policy in fact provides coverage.

There is still another and wholly independent factor that ALAS characterizes for the first time in its Reply Memorandum as both critical and dispositive: Maryland's nonjoinder of the insured Law Firm as a codefendant in this declaratory judgment action. In an important sense that argument is quite unfair to Maryland—ALAS' original 3–page Motion To Dismiss for Lack of Justiciability did not make its argument in that form, and at that time ALAS "simultaneously announc[ed] that it waives the filing of a supporting memorandum because its motion has cited the case law on which it relies" (page 1 of this Court's September 4, Memorandum Order). Because Maryland therefore has not had the opportunity to meet that argument, this opinion will first deal with the problem without reference to that new contention and will only then consider whether the new argument might serve as another string to ALAS' bow.

*Nonjusticiability for Lack of Ripeness*

■ In this Circuit it is firmly established that an insurer's duty to indemnify against liability cannot be the subject of federal litigation before the insured's liability has been established—whether by litigation on the merits or by settlement. That doctrine has most recently been reconfirmed by our Court of Appeals in *Argento v. Village of Melrose Park*, 838 F.2d 1483, 1492 (7th Cir.1988) (most citations omitted):

> "Claims for indemnity are separate and apart from tort claims and are not consolidated with the tort claim *unless* there is another contested issue such as the duty of the indemnitor to defend." [*Kerr v. City of Chicago*, ] 424 F.2d [1134], 1141–1142 (emphasis added) [ (7th Cir.1970) ]. Thus in this Circuit an insurer ordinarily cannot obtain a declaratory judgment as to its liability prior to the insured first being found liable, *Cunningham Brothers, Inc. v. Bail*, 407

F.2d 1165, 1169 (7th Cir.1969), certiorari denied, 395 U.S. 959, 89 S.Ct. 2100, 23 L.Ed.2d 745; *National Union Fire Insurance Co. of Pittsburgh v. Continental Illinois Corp.*, 646 F.Supp. 746, 750 (N.D.Ill.1986),[1] and an insurer cannot ordinarily be joined as a third-party defendant. However, where there is an actual controversy, such as over an insurer's duty to defend, both declaratory relief, and joining the insurer as a third party, are proper. In the present case the liability of the defendants had already been established and Hartford denied liability under the insurance policy. Therefore a controversy existed that permitted Hartford to be joined in the action. Thus the indemnity claim in this case need not be brought in a separate action and we perceive no other reason why the district court might possibly have lacked jurisdiction.

Although Maryland divides its memorandum in opposition to dismissal into two major subheadings, there are really four points that require discussion to scotch its effort to extricate itself from the grip of nonjusticiability most recently announced (at least by our Court of Appeals) in *Argento*. None of the factors that Maryland discusses proves persuasive.

■ First, Maryland says that what is involved here is not the "totally speculative future event" that this Court found insufficient to confer jurisdiction in a later opinion in *National Union*, 652 F.Supp. 858, 865 (N.D.Ill.1986). But Maryland's own argument is self-defeating. It says (Mem. 3, footnote omitted):

> Maryland has firmly committed a substantial sum of money to the settlement of the underlying action, despite its contention that it owes nothing. Maryland is required to produce that sum within a few days of the final approval of the settlement. All that remains for the settlement to be final is the collection of the necessary signatures on the various doc-

---

**1.** [Footnote by this Court] *National Union* is only one of a number of cases in which this Court has been called upon to deal with the same concept. It has consistently ruled against

the existence of subject matter jurisdiction in such situations because of the absence of a "case or controversy" in the constitutional sense.

uments and the obtaining of the approval of the various courts that have a say in the matter. Exhibit A to Motion to Dismiss for Lack of Justiciability. All parties fully expect that the settlement will be approved and finalized in the next month or so. *Id.*

Yet until that really happens the settlement remains a contingency, however probable its accomplishment may now appear. And the *accomplishment* of such a settlement marks the bright line between a declaration of possible *future* rights and duties and a declaration of actual *present* rights and duties—the bright line between tomorrow and today, between nonjusticiability and justiciability in Article III terms.[2]

Second, Maryland points to decisions in other jurisdictions that find justiciability by reason of what the courts there perceive as the real-world need to shape settlement strategy (coupled, of course, with the real-world fact that most disputes are settled and not litigated): *ACandS, Inc. v. Aetna Casualty & Surety Co.*, 666 F.2d 819, 822–23 (3d Cir.1981); *Rubins Contractors, Inc. v. Lumbermens Mutual Insurance Co.*, 821 F.2d 671, 673–74 (D.C.Cir.1987);[3] *Kunkel v. Continental Casualty Co.*, 866 F.2d 1269, 1273–75 (10th Cir.1989); *Eureka Federal Savings & Loan Association v. American Casualty Co. of Reading, Pa.*, 873 F.2d 229, 231–32 (9th Cir.1989). But those real-world factors are not new. They have existed with equal force throughout the period that our Court of Appeals has ruled as it did and that, in those rulings, it has rejected like considerations as a substitute for justiciability. This Court's responsibility in jurisprudential terms is of course to follow *its* leader and not other Courts of Appeals, at least where the Seventh Circuit has spoken as recently as it did in *Argento*.

In this situation, however, it is unnecessary to decide whether or not our Court of Appeals would find those other decisions persuasive as to what Article III demands.[4] It takes only a moment's thought to see that even if it did, Maryland would not prevail on its contention here. It must be remembered that Maryland has already committed itself to what money it will tender up front—simply as an advance pending the decision on actual liability—if

---

**2.** In that respect Maryland Mem. 2 suggests the misleading analogy between the acknowledged justiciability of an insurer's duty to *defend* its insured (see, e.g., *Argento*, 838 F.2d at 1492)—which Maryland characterizes as an "exception" to the principle described in the text of this opinion—and the situation involved in this case, which Maryland says "presents another exception to the general rule." But the entire premise is false: Because the very existence of a lawsuit imposes a need to defend *today*, a dispute over the duty to defend is by definition a live controversy *today*. By contrast, the mere existence of a lawsuit does not impose a need to pay plaintiff until actual settlement or judgment (a "tomorrow" event at best), so that a dispute over the duty to indemnify or pay does not ripen until that tomorrow comes. On that latter subject, the quite different situation that some other courts (though not our Court of Appeals) have found to be justiciable is discussed in the text.

**3.** Unlike the other cases in this string citation, *Rubins* really does not stand for the broad proposition for which Maryland cites those cases. By way of contrast to the issue described in *Argento*, the District of Columbia Circuit said this (821 F.2d at 674 (footnote and citation omitted)), speaking of the *Argento*-described issue first and then of the different question before the *Rubins* court:

> If insurance provided only a right to reimbursement for final judgments entered against the insured, a finding of ripeness might be difficult on the facts of this case. But the policies' protections are considerably broader, including a right to the insurer's provision of a defense and active participation in settlement.

**4.** There is something conceptually troublesome in the decisions that bow to such perceived realities based on the need to shape "settlement strategy"—the term used by all four decisions cited in the preceding paragraph of the text. After all, the world is full of people who would much prefer to have their courses of future conduct defined by advice from courts, rather than by advice from their own lawyers predicting what courts are likely to do. Federal judges stop issuing advisory opinions when they take the vows of poverty and move from the bar to the bench. Just how does the request from an insurance company that says "We would like to know whether we will be liable *if* our insured proves liable to a third party, so that we can decide just how much to kick in toward that liability" differ from the request from a businessman who says "I would like to know whether I will be liable *if* contingency x occurs, so that I can decide how to negotiate my contract to deal with that and other contingencies"?

and when the Underlying Action is settled, so that no "settlement strategy" is involved in the present situation at all. Instead, Maryland purely and simply wants to have a definition now (when no actual liability yet exists) of what its rights will be if and when that contingency ripens into a reality, rather than waiting for the real event. And *that* desire is one that is blocked by Article III.

Third, Maryland points to the decision in *American Home Assurance Co. v. Dykema, Gossett, Spencer, Goodnow & Trigg,* 811 F.2d 1077 (7th Cir.1987)—a case in which it says our Court of Appeals resolved a "strikingly similar" future settlement question—to draw the inference of justiciability here. But it does not require extended analysis to identify at least two answers that compel the rejection of that contention.

First, whatever the situation may have been when suit was first filed in *American Home,* it is clear that the underlying action there was settled *before* the trial court declared the parties' rights (811 F.2d at 1081). There was thus no occasion for the Court of Appeals to consider whether the action should have been dismissed by the District Court for nonjusticiability at the outset, only to be refiled after the underlying case was then settled—after all, when the Court of Appeals received the case it was asked to review a decision that had been rendered by the trial court on a true "case or controversy."

 Second, even if it were assumed (as does not plainly appear) that there was indeed a threshold jurisdictional flaw that was out of the way by the time the case reached the Court of Appeals, no inference can be drawn from that court's failure to spot and point out that defect. Although it is certainly true that courts are duty bound to raise subject matter jurisdiction issues sua sponte (*Argento,* 838 F.2d at 1487, 1492)—something that our Court of Appeals (and this Court among others) does as regularly as such issues are perceived—it must be recognized that even Homer nodded occasionally.[5] And subject matter jurisdiction cannot be conferred by some type of self-imposed judicial estoppel any more than by the litigants' consent or waiver. No less an authority than the United States Supreme Court teaches that—see, e.g., *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 119, 104 S.Ct. 900, 918, 79 L.Ed.2d 67 (1984), quoting *Hagans v. Lavine,* 415 U.S. 528, 533 n. 5, 94 S.Ct. 1372, 1377 n. 5, 39 L.Ed.2d 577 (1974):

> [W]hen questions of jurisdiction have been passed on in prior decisions *sub silentio*, this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us.[6]

 Maryland's fourth argument suggests distinctions between this case and other cases in which courts have declined to issue declaratory judgments in insurance coverage situations (*Tews Funeral Home, Inc. v. Ohio Casualty Insurance Co.,* 832 F.2d 1037, 1047 (7th Cir.1987) (Judge Grady's opinion below, affirmed per curiam) and this Court's decision in *Village Management, Inc. v. Hartford Accident & Indemnity Co.,* 662 F.Supp. 1366, 1373 (N.D.Ill.1987)). This opinion need not pause on that score, however, for the more relevant consideration is that the Declaratory Judgment Act is not itself a source of federal jurisdiction, which must be located elsewhere in substantive terms. Maryland Mem. 10–11 says:

> This dispute must be decided at some point—the sooner, the better for all concerned. If the settlement goes through as expected, dismissing this action will have accomplished nothing more than adding to the delay and expense of this litigation. In the unlikely event that the settlement breaks down, dismissing this action will have left the parties uncertain

**5.** Horace, *Ars Poetica,* line 402; and see Pope, *Essay on Criticism,* Part I, lines 177–78.

**6.** [Footnote by this Court] And our own Court of Appeals has been equally firm on that principle —see, e.g., *United States v. Daniels,* 902 F.2d

1238, 1241 (7th Cir.1990); *In re Stegall,* 865 F.2d 140, 142 (7th Cir.1989); *Glidden v. Chromalloy American Corp.,* 808 F.2d 621, 625 (7th Cir. 1986).

about their obligations to the insured and in danger of acting to their prejudice without knowing their rights. Such uncertainty cannot but taint the conduct of the underlying litigation and any further settlement negotiations.

That statement really carries its own death warrant—this dispute will be decided only when it is ripe, and such ripeness will be measured by the *fact*, and not the mere *expectancy*, of settlement.

### Absence of the Insured Law Firm

■ That then resolves the ultimate issue in ALAS' favor in terms of the same jurisdictional arguments that Maryland has had the opportunity to attempt to meet—however unsuccessfully—in its responsive memorandum. But as suggested at the outset of this opinion, ALAS' Reply Memorandum spends the bulk of its discussion (fully 11 pages out of 15) on a quite different argument. Although it uses the same case that it relied on in its original 3-page motion (*Travelers Indemnity Co. v. Standard Accident Insurance Co.*, 329 F.2d 329 (7th Cir.1964)) as the springboard for its new analysis, now it urges—as it did not in its opening gun—that Maryland's failure to join the insured Law Firm as a defendant here is fatal to jurisdiction.

As indicated in the opening paragraphs of this opinion, this Court would not resolve the case at this point if it were compelled to rely on that line of analysis, one to which Maryland should have the oppor-

tunity to respond. Instead it would allow Maryland to file a surreply memorandum. But because Maryland loses anyway, entirely without reference to that issue, this Court will go on to address ALAS' new argument only briefly.

*Travelers Indemnity* did indeed hold that no jurisdiction existed in that case because of the absence of a justiciable controversy between two insurers where the underlying action against the insured (a nonparty) had not yet been resolved. And it is certainly true that no later case in this Circuit has held otherwise as to the duty to *indemnify* the insured (though five years later *Cunningham Brothers, Inc. v. Bail*, 407 F.2d 1165 (7th Cir.1969) properly reached a different result in upholding the justiciability of the duty to *defend*—which is clearly a current and live issue even though the underlying action against the insured has not yet established its liability).[7]

It is also true, as ALAS R. Mem. 6–8 points out, that two Courts of Appeal and one District Court have cited *Travelers Indemnity* with approval in the past decade. But not one of them supports the argument that ALAS now relies on:

1. Although *Provident Life & Accident Insurance Co. v. Transamerica–Occidental Life Insurance Co.*, 850 F.2d 1489, 1491 (11th Cir.1988) spoke of the failure of the insurer there to sue its insured rather than another insurer, there the situation was also one in which

---

7. This Court's September 4 memorandum order has already identified *Cunningham Brothers* as the seminal case in this Circuit, still relied upon in later cases (of which *Argento* is exemplary). ALAS R.Mem. 5 & n. 3 purports to find a different significance in our Court of Appeals' decision in *Diamond Shamrock Corp. v. Lumbermens Mutual Casualty Co.*, 416 F.2d 707 (7th Cir.1969), a contemporary of *Cunningham Brothers.* But what ALAS's counsel has missed entirely is the *real* difference between *Diamond Shamrock* and the kinds of cases (such as *Cunningham Brothers* and *Argento* ) that inform the decision here. In *Diamond Shamrock* the insured had *already sustained* the loss—a casualty loss. That meant that (wholly unlike the present posture of this case) there was a real *present* dispute, not a contingent *future* one, as to which the insurer was liable to indemnify the insured. And that was equally true of still an-

other chapter in this Court's volume of opinions (which ultimately aggregated some 30 in number) in *National Union*, 110 F.R.D. 615, 619 (N.D.Ill.1986), which cited *Diamond Shamrock* for the same principle and which ALAS R.Mem. 6 n. 4 also cites. In *National Union* the real present dispute stemmed from the insured bank's existing liability to indemnify its directors against the actually incurred expenses, as well as the potential ultimate liability, in a pending action against those directors. Thus the situation as between the bank and the directors was entirely parallel to the duty-to-defend situation as between the insurer and the insured in such cases as *Cunningham Brothers* —and that current obligation in turn fueled the current dispute between the bank and *its* insurer as to which of them must bear the burden of that defense.

the insured had sustained losses (in the form of medical expenses)—indeed, the plaintiff insurer had already paid *benefits* to the insured covering those expenses. Thus (unlike here) there was a live controversy, and the question for the court was between which parties that controversy existed. Of course the court held that the question whether the insurer had wrongfully paid those benefits to its insured was a dispute between *them,* so that the absence of the insured was fatal.

2. *Century Indemnity Co. v. McGillacuty's Inc.,* 820 F.2d 269, 270–71 (8th Cir.1987) was decided on the same ground that has been found controlling in the first section of this opinion—because the insured's liability had not yet been determined, and *not* because the insured was not a party to the action.

3. That was equally true in *Companion Assurance Co. v. Alliance Assurance Co.,* 585 F.Supp. 1382, 1385 (D.V.I.1984), which put the matter in exactly those terms:

> Pivotal in our review of whether this issue presents a justiciable controversy is the fact there has been no judgment or settlement in the underlying tort action against the insured.

In sum, it is true that the cases from other circuits relied on by Maryland and addressed in the first section of this opinion might perhaps be distinguished in *factual* terms on the basis that they all involved declaratory judgment actions between insured and insurer, rather than between two insurers. But that is a distinction that is not characterized by the cases themselves as a *legal* difference—it is spun out only in ALAS' Reply Memorandum. This Court declines to rest its own conclusion in this case on such an ex post method of analysis that did not form the ratio decidendi of the cases being analyzed. Accordingly this Court has reached its result only for the reasons stated in the first section of this opinion.

## Conclusion

There is no Article III "case or controversy" here, and subject matter jurisdiction is therefore lacking. This action is dismissed.